## Redstone Coke Company, Limited, *versus* Roby.

1. A mining boss under the Act of April 28th, 1877, P. L., 58, is a fellow-servant with the miner, for whose negligence his employer is not liable.

2. A mining boss is a creature of the legislature selected by the operator of a coal mine in obedience to the command of law and in the interest and for the protection of the miners; where, therefore, reasonable care in his selection has been exercised, the operator is not liable for injuries resulting from his negligence.

3. The operator of a coal mine fulfills the measure of his duty to his employees, if he commits his work to careful and skillful bosses and superintendents who conduct the same to the best of their skill and ability.

4. Reese *et al. v.* Biddle, 2 Amerman, 72; Waddell & Walter *v.* Simoson and wife, Id., 567, approved.

February 3d, 1887.   Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ., TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Fayette county:* Of January Term, 1887, No. 223.

Case by Isaac G. Roby against the Redstone Coke Co., Limited, to recover damages for injuries sustained through the alleged negligence of the defendants in not properly ventilating their coal mine in which the plaintiff was employed as a miner. Plea, not guilty.

The following facts appeared on the trial of the case before INGRAHAM, P. J.

The Redstone Coke Company, Limited, the plaintiff in error, and defendant below, was organized under the Act of 2d June, 1874, and its supplements. The character of its business was the mining of coal and manufacturing of coke. The company leased certain coal lands on the Southwest Pennsylvania Railway, about three miles southeast of Uniontown, and in the summer of 1881, soon after its organization, began the business for which the company was organized. The mine was worked through two slopes, called upper and lower—about fourteen hundred feet apart. In addition to these, there were two other openings, one near each slope, called a man-way or air course. These mines were originally opened late in the fall of 1880, and but little mining had been done prior to the time plaintiff in error leased them. They were ventilated, as others in the coke region were at that time, by a steam pipe, which extended from the mouth of the lower pit to its bottom. The air in this slope was by this means heated, and, being rarified, passed out, while the air coming in through the upper openings passed into the lower slope, thus producing a current of air through the mine. The air was driven into the headings, or rooms, by a brattice, or door. This was the approved mode of ventilation in that mining region at the time, and is still used there in many places. The uncontradicted testimony showed that the pipe used in this mine was sufficient to ventilate a "mine as extensive again."

In May, 1883, and for two years prior, Isaac G. Roby, the defendant in error, had been working as a coal miner in this mine for the plaintiff in error. About five and one half o'clock on the morning of May 28th, 1883, Mr. Roby went to his work as usual in that part of the mine known as Flat Heading, No. 4, which was about seven hundred and sixty feet from the mouth of the upper slope. He testified that when within forty feet of the face of the heading an explosion occurred and he was burned. At that time there were three flat-headings connecting the two slopes. The company employed from seventy to one hundred men.

At the time of the explosion W. T. Dom was the superintendent, Adolph Whyel was the mining boss, and Jacob Pfeffer

was the assistant mining boss at this mine.    No question as to the competency of these employees for their respective positions was alleged in the plaintiff's narr. or was raised on the trial in the court below.

For the injuries sustained by Roby he brought this suit, alleging that the plaintiff in error allowed its mines to become filled with evplosive gases, by which he was burned, and did not provide ample means of ventilation, nor have its mines carefully examined every morning before the workmen were allowed to enter.

Verdict for the plaintiff in the sum of $1,500 and judgment thereon, whereupon the defendant took this writ and filed the following assignments of error :

1. The court erred in refusing defendant's first point, which point is as follows : That under all the evidence in this case, the plaintiff is not entitled to recover, and their verdict must be for the defendant.

2. The court erred in refusing defendant's eighth point, which point is as follows.: That if the jury believe from the testimony that there was no explosive gases or fire damp known in defendant's mines prior to the day of the explosion which caused plaintiff's injuries, the defendant was not compelled to have every working place in said mine carefully examined every morning with a safety lamp by a competent person, before any workmen were allowed to enter.

3. The court erred in not charging the jury fully on the law applicable to the facts of the case.

4. The court erred in not directing a verdict for the defendant after affirming defendant's fourth point, which point is as follows : That notice to the mining boss of gas in the mine was no notice to the company, and that if the jury believe that the explosion occurred and the plaintiff was injured by the negligence of said mining boss, the defendant company would not be responsible and the plaintiff cannot recover; and defendant's seventh point, which point is as follows : That under the Act of Assembly, it was the duty of the mining boss to keep a careful watch over the ventilating apparatus, and to see that the mine was properly ventilated, and his neglect or failure to do so would not render the defendant company liable.

*S. L. Mestrezat* (*Charles E. Boyle* with him), for plaintiff in error.—There was no testimony to establish negligence on part of the defendant.   It is error to submit to a jury a question of fact of which there is not sufficient evidence to support a verdict: Raby *v.* Cell, 4 Nor., 82; Egbert *v.* Payne, 3 Out 244; Stouffer *v.* Latshaw, 2 Watts, 165.

The mine owners or operators are not presumed to have suf-

ficient practical knowledge to manage the inside workings, and hence the law requires them to employ a competent person for that purpose. If the person thus employed is not competent it is the duty of the miner to so notify the superintendent or mine owner. If, however, due care is used in his selection—and that is presumed till the contrary is shown, Mansfield Coal Co. v. McEnery, 10 Nor., 191—the mine owner is not responsible for his mistakes or negligence.

It is well settled in this state, that a mining boss under the Act of 1877 is a fellow-servant with the miners and laborers, and that for his negligence the employer is not responsible: Reese et al. v. Biddle, 2 Amerman, 72; Waddell & Walter v. Simoson and wife, Id., 567.

*R. H. Lindsey* for defendant in error.—The contention in this case is: Whether or not the plaintiff in error provided for its mines "ample means of ventilation;" and whether or not it was required to have in its employ a fire boss under the Act of April 18th, 1877, P. L., p. 58.

This court cannot afford to declare that the law requires the test of an actual explosion before the owners of mines are required to go to the paltry expense of employing a fire boss, for one human life is worth more than all the expense of all the fire bosses of all the mines.

The case was properly submitted to the jury, who from all the evidence found as a matter of fact that the defendant was negligent in not providing ampler means for ventilation as required by law.

Mr. Justice PAXSON delivered the opinion of the court, March 7th, 1887.

The plaintiff below was injured by an explosion of gas in the mine where he was working, and brought this suit against the mine owners to recover compensation for the injuries thus received.

Under the instructions of the court the jury found a verdict in favor of the plaintiff. It seems difficult to understand how they reached this result in view of the answer of the court to defendant's points, most of which were affirmed without qualification. The first point, however, was refused. It was, " that under all the evidence in this case the plaintiff is not entitled to recover."

It was alleged, on the part of the plaintiff, that the defendants did not furnish proper ventilation for the mine, and if we are to measure their responsibility by the results, we would have little difficulty in arriving at such a conclusion.

It has been held in a number of recent cases that the mine

owners are not responsible for the negligence of their mining boss: Reese *v.* Biddle, 112 Penna.; Waddell *v.* Simoson, Id., 567. Reasonable care must be exercised in selecting a competent person for such position, but when such care has been exercised the cases are clear that the company employing him is not liable for his negligence. This results necessarily from the Act of April 28th, 1877, P. L., 58, which imposes upon the company the duty of providing a mining boss. This Act was passed, as its title shows, to protect the health and safety of the persons employed in the bituminous coal mines, and is a wise and just measure. The one great danger of such mining operations has always been the accumulation of foul air and gases, and it was to avoid this and secure proper ventilation that the fifth section of the Act requires the mine owner, *nolens volens*, "to employ a competent and practical inside overseer to be called a mining boss," etc. The section then proceeds to define his duties, the principal of which is to see that the mine is kept properly ventilated. The mining boss is therefore a creature of the legislature, selected by the mine owner in obedience to the command of the law, and in the interest and for the protection of the miners themselves. It has therefore been properly held that where the mine owners have exercised reasonable care in the selection of a competent mining boss, they are not liable for injuries resulting from his negligence. His co-employees take the risk of his negligence, precisely as in other cases. If he is incompetent or careless, they can at once discover it and notify the superintendent, while the owners, with every wish to protect the miners, have no such opportunities of information. It is very plain, as was held in Waddell *v.* Simoson, *supra*, that the operator of a coal mine fulfills the measure of his duty to his employees if he commits his work to careful and skillful bosses and superintendents, who conduct the same to the best of their skill and ability. More than this he cannot do, and with such duty performed, whatever of risk or danger remains must rest upon the miners themselves. Their work is always hazardous with the best appliances and the highest degree of care. Their own safety requires that in measuring responsibility for accidents care should be taken to determine it justly, with due regard to the respective rights and duties of the parties, employers and employed.

If the explosion by which the plaintiff was injured was the result of negligence, it was the negligence of the mining boss. The ventilation of the mine was his especial duty, made so by the express language of the Act of Assembly. At the time of his injury the plaintiff was driving a flat-heading from the slope and had driven it about 350 feet. It was alleged that

there was no way of getting air to this place where he was working except what might be produced from the burning of his torch or the passage of a mule wagon. The explosion was caused by the open lamp of the plaintiff coming in contact with the "black damp" that had accumulated in the mine. It was alleged that no examination of the mine was regularly made with a safety lamp, and that no proper measurements were made of the air currents. If we regard these allegations as established by the verdict, it only proves the mining boss to have been negligent, of which fact the miners themselves had ample means of knowledge, while the owners had none.

The first specification of error is sustained. This renders a discussion of the others unnecessary.

Judgment reversed.