## Lineoski, Appellant, *v.* Susquehanna Coal Co.

### [Marked to be reported.]

*Mines and mining—Master and servant—Fellow servant—Mining boss —Negligence—Act of June 30, 1885.*

A mining boss is the fellow servant of the miners under his charge, and if proper care has been exercised in selecting a competent person for the position, the employer is not liable for his negligence, under the act of June 30, 1885, P. L. 239.

*Defective mine—Notice to employer—Risk of employment.*

If the defects of a mine are serious, and the mining boss does not correct them, it is the duty of the workman having knowledge of the defects to notify his employer, and if he does not do this, he continues his work at his own risk.

*Continuing negligence of mining boss.*

The fact that the negligence of a mining boss continued for a long time does not affect the general rule that the employer is not liable for injuries to miners caused by the mining boss's negligence.

*Mine foreman—Act of June 30, 1885, art. 12, rule 24.*

The provision of rule 24, of the 12th article of the act of June 30, 1885, P. L. 239, requiring the miner to give notice of any apprehended danger to the mine foreman, does not make the mine foreman the representative of the owner for all purposes, so as to charge the owner with liability.

*Negligence—Fellow servants—Inside foreman of mine.*

The inside foreman of a mine is a fellow servant of the miners within the rule that an employer is not liable for the negligence of fellow servants.

*Negligence—Piling of culm on surface—Evidence.*

The piling of culm taken from a coal mine upon the surface above the mine, is not negligence on the part of the mine owner, where it does not appear that the usual methods observed in such cases were departed from, and there is no evidence to connect the caving-in of the roof of the mine with the deposit of the culm upon the surface.

*Opinion of witness—Expert—Evidence.*

The opinion of an expert who neither knows nor can know more about the subject-matter than the jury, and who must draw his deductions from facts already in possession of the jury, is not admissible.

*Incompetent witness as to cause of accident.*

A witness testified that he was working in a chamber of the mine some distance from a chamber whose roof was supposed to have caved in. He stated that he had seen cracks in the roof of the chamber where he was

working and water flowing there, but did not state that he had ever been at the place where the accident occurred. He was asked this question: "What brought down the roof here in this mine where the accident happened, if you know?" *Held,* that the question was improper.

Argued April 10, 1893. Appeal, No. 403, Jan. T., 1892, by plaintiff, Annie Lineoski, individually and as administratrix of Michael Lineoski, deceased, from order of C. P. Luzerne Co., Nov. T., 1886, No. 278, refusing to take off judgment of nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Trespass for death of plaintiff's son.

At the trial, before WOODWARD, J., it appeared that, on Dec. 18, 1885, a break occurred in one of the chambers of defendant's mine, and a great quantity of quicksand and water flowed in, engulfing twenty-six miners whose bodies were not recovered. According to plaintiffs' theory of the case the roof of the chamber was rotten and weak and had not been sufficiently propped and timbered, and that in consequence of these defects the roof had caved in. The defendant's theory was that the gangway had penetrated very near the bottom of a pit hole worn in the overlying strata by erosion, which was filled with water and quicksand in great volume, and that the pressure had crushed in the rib or side of the gangway. Further facts appear by the opinion of the Supreme Court and of the court below.

When G. M. Williams, a witness for plaintiff, was on the stand, defendant's counsel made this offer:

"We offer a copy of that map, printed from the same plate, with the same marks on it, identical in every respect except that the map we offer has the gangways and counter gangways represented on it colored. Objected to as not cross-examination and incompetent."

The Court: Witness having testified that the map produced by defendant's counsel is an exact copy or duplicate of the map already in evidence, the court allows this map of defendant to be used during the trial, for purposes of convenience. Exception. [1]

J. C. Brader, a witness for plaintiff, was asked: "Q. Taking into consideration the testimony you have heard upon the

witness-stand here in this case, what, in your opinion, from your knowledge of this mine and the situation generally, inside and out, was the cause of this caving in of the mines?"

Defendant objected that the witness was not qualified to give an opinion on this subject.

The Court: The witness, to be competent as an expert, must be shown to have some particular knowledge on the subject he is called upon to speak about, over and above that possessed by ordinary men. In this case the witness does not claim to be a scientific mining engineer nor a practical miner, nor to have any particular familiarity with these mines as to their workings inside. I do not think he is in any sense of the word an expert. Objection sustained, and exception. [2]

Daniel Bonewitz, witness for plaintiff, was asked: "Q. Plaintiff's counsel: At this place we speak of in this air shaft, what was the thickness of the rock and slate overlying this Ross seam?" Objected to.

The Court: I understand the witness to say that he knows about the thickness of the cover of this vein at a point some 900 feet away from the point where the accident occurred. It is too remote. Exception. [3]

The same witness was asked: " Q. State whether or not in your opinion, knowing that culm up on top, from your practical knowledge of mining, your experience of twenty-five years, this was a safe place to have permitted men to work in—right at that point where the accident happened, or beyond it over at the point where these men were inclosed—with that danger there before them?"

Defendant's counsel objected to the question: (1) That the facts on which the witness is asked to give his opinion are not facts known to himself, but are facts which it is alleged have been testified to by witnesses, and that witness has not heard all of this testimony, and that there is a conflict in the testimony with regard to the facts stated in the question. (2) That this is not a subject-matter for expert testimony at all. (3) That the testimony is entirely immaterial, incompetent and irrelevant.

The Court: It does not seem to me that we have sufficient data in this case thus far, to justify the calling of experts— especially an expert who is a miner simply, who has no scientific knowledge beyond that of an ordinary miner, nor any

practical knowledge from actual experience in these particular mines. The question for the jury ultimately, if it gets there at all, is whether, under the evidence, it was negligence to allow work to go on there. [4]

Frederick Winters, a witness for plaintiff, was asked : " Q. What brought down the roof here in this mine where the accident happened, if you know ? "

Defendant objected : (1) That the witness has not testified that he was in the place where the accident occurred. (2) That he has not testified to any knowledge that would entitle him to give an opinion on the subject. (3) That it has not been proven in any way that he is an expert competent to give an opinion.

The Court : That involves again the question of experts. If it is a question at all for the jury, it is a question for them under all the evidence, whether it was negligence on the part of the defendant company in the existing state of things there to go on with the mining. [5]

A. J. Gallagher, witness for plaintiff, was asked : " Q. Whether mining coal at a place where there is a synclinal, and especially where there is a sand bank, as described by the witnesses in this case, with a culm bank overhead and water percolating through the sand—whether mining at such a point in a mine is more than ordinarily dangerous ? "

Objected to as follows : (1) That the facts upon which the hypothetical question is based have not been proved in this case. (2) That the witness has not shown the qualifications of an expert necessary to enable him to testify on this subject in this particular case. (3) The case itself is not the subject of expert testimony.

The Court : I do not think that this evidence is competent or relevant. The question in this case is whether the company were negligent in going on with the mining operations after certain things had happened, and while they were happening at that point. It is not a question involving that expert learning which is referred to. Nor does the hypothetical question stated to the alleged expert seem to be based upon any clear testimony in the case, in our judgment. Objection sustained, and exception. [6]

The same witness was asked this question : " Q. You have

sat listening for two days to the testimony as delivered here. Now take this mine of the Susquehanna Coal Company just as it has been described by these witnesses: 1. You have heard the witnesses testify that they go into a slope running down a distance of about one thousand feet—you may refer to the map before you—then they go into what is called a tunnel of about three hundred feet into the Ross seam, then they travel along this gangway a distance of nearly eighteen hundred feet until they strike what they call the synclinal there, as you can see upon the map; they also state that they make a bend —that the gangway turns around at the foot of this anticlinal there; you have heard the witnesses testify that they were working for several months in there previous to the accident, that these timbers were breaking, that the pillars were bursting and breaking, and that in some places the roof was coming down; that right overhead large streams of water, some half as big as your arm, were coming through, and that this water was muddy and carried with it lots of sand. You also heard one of the witnesses testify that he drove up one place near into the fifth counter and drove it right up into the sand or into the clay; you also heard the altitude—that is the height above the level of the sea—described by the mine inspector. You also heard the witnesses testify that overhead, overlying this place where the timbers were breaking and the roof cracking and the muddy water coming in—indicating surface water —that there was a heavy body of culm covering three acres, said culm having a weight of about two millions of tons, also that there was a sand bank at one end of this culm bank and right over the point where these men were working; and that previous to the dumping of this culm bank there, there was a natural channel of water running down this ravine, that the land itself was boggy and swampy and that when they put the culm on it choked up this natural water course. Having listened to all this testimony, state what, in your judgment, was the cause of the breaking in of the roof at this point where the accident happened."

Defendant's counsel objected on the ground: (1) That the statement of the counsel as to what has been proved is eminently inaccurate, there being no such state of facts proved by the testimony in this case. (2) Because this is not a question

for expert testimony. (3) Because the witness has not exhibited any such qualifications as would entitle him to answer this question as an expert.

The Court: The question as to the cause of this accident is quite a distinct one. The question submitted to the witness is so complicated that I cannot say that it is competent in its present form. Because it involves not only a question as to the negligence by piling up culm on the outside, but also as to the negligence of mining after warning received inside of the mines, where the miners engaged in the work were just as much experts, if not more so than the witness. As a whole, therefore, I regard the question as incompetent. Objection sustained and exception. [7]

The same witness was asked: " Witnesses having testified and you having heard them, that for some months previous to the accident in question, and up to within three days of the same, they observed water in places coming down from the roof of the gangways and chamber, of a muddy nature, the props and timbers split and cracked in several places along the counters ; the roof cracked and lowering, the pillars and sides crushing in ; that on the surface over this mining operation was a depression in which water occasionally ran ; that the land itself was wet and soggy, and that a culvert was built to carry off the water ; that about three acres of this surface depression had deposited upon it about 2,000,000 tons of culm, about forty feet high ; that the culvert was covered over by this culm ;—state whether or not, under these circumstances, the ordinary risks of mining, in the vicinity, and almost immediately underneath this culm-bank in the mines below, would or would not be increased ; and also what, under the circumstances, would be the natural and probable result of mining in such a place, and under such a weight of culm ? "

Objected to as follows : (1) Because the witness has not been shown to have the qualifications necessary for an expert to give an opinion on the question proposed. (2) Because the facts assumed in the question have not been established by the testimony. (3) Because all the alleged facts were open to the inspection of the workmen in the mines and they were as competent to judge of danger as the company. (4) Because the question is not one upon which expert testimony is competent, as it does not require peculiar skill or knowledge to answer it.

The Court: In order to entitle the witness to testify as an expert, it must first be shown that he has acquired peculiar skill and scientific knowledge upon the subject; for the term expert as used in the law implies both superior knowledge and practical experience in the art or business or profession involved in the case. Furthermore, the general rule in regard to the admission of expert testimony, we understand to be this: Where the facts of a case are in dispute or have not been fully ascertained at the trial, it is error to ask an expert who has heard a portion of the evidence his opinion upon the case, and this although he may be asked such a question in a similar case hypothetically stated. For the reason that we do not think the witness on the stand is such an expert as is required by the rule stated by us, and for the other reason that the offer is not made upon an hypothesis of ascertained facts—the evidence not being closed and the subject-matter being in dispute—the objections are sustained, the testimony is rejected, exception is noted and bill sealed for the plaintiff. [8]

The same witness was asked: " Q. After hearing the testimony of the witnesses, that, for five or six months, and up to within three days of the time of this accident, in this mine, at a point three hundred feet to within twenty yards of the place where the accident is located, the props and timbers were breaking, the pillars crushing and the roof split and lowering, so that at times the cars had to be barred out from the working, and as testified to by Mr. Brader, assistant superintendent, that at a short distance from the cave-in a bore-hole was put down, which showed about fifty feet of rock or slate covering over the vein of coal in which the accident happened; and overhead where the accident happened and these men were working, the surface of the ground showed a depression surrounded by hills, through which depression water used to run at times and in which depression a natural channel was formed for the water to run. In this depression and overhead where these men were working, about two millions of tons of culm were piled in an area of three acres. The water was choked off and the natural channel was choked up and the water made its way into the culm-bank, and down into the surface—state whether or not, in your opinion, under this state of facts, was it prudent or otherwise for the company to permit the portion of the mine underneath the said culm-heap to be operated at the time of the accident."

Defendant's counsel made the same objections to this ques· tion as was made to the last.

The Court: In our opinion it is the duty of the court in this case to admit any evidence that throws light on the condition of those mines at the time of the disaster, and then if the case goes to the jury, it will be for the jury to determine whether it was prudent for the company to prosecute their mining in that condition of things. All evidence which throws light on that subject, of course, is admissible ; but the testimony of an expert is not admissible to establish a fact deducible from evidence, which the jury is just as competent to deduce as the witness. You may show all the facts and circumstances indicative of negligence, but you may not call an expert on any particular subject, unless you clearly establish the necessity, first, for an expert on that subject; and, secondly, that the witness proposed, has made a study of that particular subject, such as qualifies him beyond an ordinary man or juryman, to give his opinion in regard to it. With these views, we sustain the objection and note an exception for the plaintiff. [9]

The court entered a compulsory nonsuit, in an opinion by WOODWARD, J., as follows :

" For several months before the accident in this case, the miners and workmen in certain chambers of this mine were troubled with an inflow of what is claimed to have been surface water. The roof of the mines had cracked to some extent, and the water came in through these openings, as well as along the sides of the chambers. Some of the props were broken by the settling of the roof. There were indications from time to time, of what is known as a 'squeeze,' so that it was difficult to move the cars over their usual route. Complaints were made to the mine foreman, but he did not apparently attach much importance to these indications, nor regard them as pointing to danger to those engaged in mining and removing the coal. The men continued at their work until the morning of the 18th of December, 1885, when the flood of water, earth and sand occurred, which resulted in the entombment and death, among others, of the driver boy, Max Lineoski, whose mother is the present plaintiff.

" It has been established by several decisions of our Supreme Court, in actions brought to recover damages resulting from

the alleged negligence of the owners and operators of mines, that the mine foreman, or boss, who has general charge of the management of the work, is, in contemplation of law, a fellow workman with those who perform the actual labor of mining and removing the coal.

" When,, therefore, an owner or operator of mines has employed a competent mine foreman, and accident results to a workman in the mines from the negligence of such foreman, the common employer is not held liable in damage for the injury arising from the accident. Such negligence is held to be one of the necessary risks of the business which the workman takes upon himself.

" [Applied to the present case, this doctrine of the law is fatal to the plaintiff's claim unless there is something else established by the evidence than simply the dangerous character of the mines, and notice of the danger conveyed to the mine foreman but not to the common employer.] [10]

" [We are unable to find in the testimony any proof of notice to the Susquehanna Coal Company of the dangerous condition of their mines at the point in question.] [11]  The mine boss had notice, but the company had not such notice as the law requires to render them liable in this action.  Nor are we able to see in what respect the question is a different one than it would have been if presented before the act of 1885.  We are unable to perceive that the mine foreman, under the statute, stands in any different relation to his fellow workman then he did under the act of 1870.  The cases of Waddell v. Simoson, 112 Pa. 567; of Redstone Co. v. Roby, 115 Pa. 364, seem to us applicable to the question now presented, and to be conclusive of it.

" As to the other question involved, that of the alleged negligence of the company in depositing their culm, we feel bound to hold : [That want of ordinary care has not been established by the evidence : (1) For the reason that it has not been clearly shown that the deposit of the culm was the cause of the accident.  (2) It has not been shown, by the production of any competent testimony, that, if the deposit of the culm at the place in question was the cause of the accident, such deposit was negligently made, in view of the thickness of the cover at or near that point and of the usual custom of disposing of the

culm produced in the business of mining coal. (3) It does not appear from any evidence in the case at what point of time the culm, which covered three acres, was deposited at or near the location of the accident, nor whether it was before or after the employment of the men working in the mines on the 18th of December, 1885.] [12] I refer to the case of Wagner v. Chemical Company, [147 Pa. 475,] recently decided by our Supreme Court, in which HEYDRICK, J., said: 'It is a well settled rule that an employee will be deemed to have assumed all the risks naturally and reasonably incident to his employment, and to have notice of all risks which, to a person of his experience and understanding, are, or ought to be, open and obvious. This is a reasonable rule, for, when a man seeks employment in any particular department, of either industrial or intellectual activity, he thereby represents himself to be qualified by the necessary experience or learning, as the case may be, for the performance of the duties which he proposes to assume, and such experience or learning necessarily brings a knowledge of the ordinary risks of the employment.'

" The motion for a compulsory nonsuit must prevail and is now granted."

Rule to take off nonsuit discharged. Plaintiff appealed.

*Errors assigned* were (1–9) rulings on evidence as above ; (10–12) portions of opinion as above; and (13) in entering nonsuit and refusing to take it off; quoting bills of exceptions and portions of opinions in brackets.

*W. H. Hines, Edward Lynch* with him, for appellants.—The case of Waddell v. Simoson, 112 Pa. 567, and Redstone Coal Co. v. Roby, 115 Pa. 364, relied upon by the court below, and all the mine cases in the books, from the case of Lehigh Valley Coal Co. v. Jones down to the present time, wherein the master is relieved from liability by reason of the employment of a competent mine foreman, refer solely to a condition of things in a mine where accidents happen through dangers that originate from some defect that is not noticeable or is of recent origin. In our case the danger was open and notorious for months before the accident.

The general superintendent was the direct representative of

the company, and knew that this mine was likely to cave in, if he had any judgment at all.

Rule 24, act of 1885, P. L. 239, differs from the law of 1879, in which the former rulings of the court in the cases of Waddell v. Simoson, 112 Pa. 567; Redstone Co. v. Roby, 115 Pa. 364, were rendered, which held the mine boss a fellow servant of the mine worker.

The master is. bound to furnish a reasonably safe place for his servant, and to know that appliances once safe may become unsafe: Schall v. Cole, 107 Pa. 1; Baker v. R. R., 95 Pa. 211; Green & Coates St. Pass. Ry. v. Bresmer, 97 Pa. 103; Patterson v. Pittsburgh R. R., 76 Pa. 389; Tissue v. B. & O. R. R., 2 Cent. R. 596; Lewis v. Seifert et al., 116 Pa. 647; Wharton on Negligence, par. 210; Wagner v. Chemical Co., 147 Pa. 475; Trainor v. Philadelphia & Reading R. R., 137 Pa. 148; P. & N. Y. Canal & R. R. Co. v. Mason, 109 Pa. 301; Hough v. Ry., 100 U. S. 214; Coombs v. Cordage Co., 102 Mass. 585; Spelman v. Fisher Iron Co., 56 Barb. 151; Sullivan v. Mfg. Co., 113 Mass. 396; R. R. v. Doyle, 49 Texas, 190; Ross v. Walker, 139 Pa. 42.

An employer is bound to furnish his employee with such tools and appliances as with ordinary and reasonable care may be used without danger: Coal Co. v. Hayes, 128 Pa. 294; Patterson v. Ry., 76 Pa. 389; Allison Man'f Co. v. McCormack, 118 Pa. 519; Ship Building Works v. Nuttall, 119 Pa. 158.

It was the duty of the company to notify appellant's son of this dangerous place in the mine. As he was inexperienced and a minor, the necessity for notice was greater than under ordinary circumstances: Webster Coal Co. v. Marsden, 8 Cent. Rep. 198; Coombs v. Cordage Co., 102 Mass. 585; Spilman v. Fisher Iron Co., 56 Barb. 151; Sullivan v. Mfg. Co., 113 Mass. 396; R. R. v. Doyle, 49 Texas, 190; Green & Coates St. Pass. Ry. v. Bresmer, 97 Pa. 106; Cayzer v. Taylor, 10 Gray, 274; Seaver v. B. & M. R. R., 14 Gray, 466; Gilman v. R. R., 10 Allen, 233; Parkhurst v. Johnson, 50 Mich. 70; Swoboba v. Ward, 40 Mich. 420; Baker v. Allegheny R. R., 95 Pa. 211; Smith v. Oxford Iron Co., 42 N. J. L. 467; O'Connor v. Adams, 120 Mass. 427; Fort v. R. R., 17 Wall. 544; Ross v. Walker, 139 Pa. 42.

Obviously, an employer may perform all his duties in respect

of his machinery and his employees through agents, and will in such a case be responsible for their acts. A corporation stands on the same footing: Ardesco Oil Co. v. Gilson, 63 Pa. 151; Michigan C. R. R. v. Dolan, 32 Mich. 510; Corcoran v. Holbrook, 59 N. Y. 517; Crispin v. Babbitt, 81 N. Y. 516; Mitchell v. Robinson, 80 Ind. 281; Flike v. Boston R. R., 53 N. Y. 549; Ryan v. Bagaley, 50 Mich. 179; Tyson v. R. R., 61 Ala. 554; Harper v. R. R., 47 Mo. 567; Woodward v. Shump, 120 Pa. 469; Lee v. Woolsey, 109 Pa. 124.

The court was clearly in error in rejecting the testimony of all the witnesses, including the expert called by plaintiff, on the questions as to the cause of this accident, and the probable result from the condition and working of this mine under all the testimony offered: Wh. Ev. §§ 444, 452; Fenwick v. Bell, 1 C. & K. 312; Malton v. Nesbit, 1 C. & P. 72; Lane v. Wilcox, 55 Barb. 615; Seaver v. R. R., 14 Gray, 466; Clark v. Willett, 35 Cal. 534; D. & C. S. T. Co. v. Starrs, 69 Pa. 41; First Nat. Bank v. Wirebach, Ex'r, 106 Pa. 44; Minnequa S. Imp. Co. v. Coon, 10 W. N. 502; Lewis v. Seifert, 116 Pa. 628.

The case was for the jury: Iron Co. v. Shaffer, 8 Atl. R. 204, Christner v. Coal Co., 146 Pa. 67; Rummell v. Dilworth, 111 Pa. 371; Pa. R. R. v. Coon, 17 W. N. 137; Schum v. P. R. R., 107 Pa. 11.

*Henry W. Palmer*, for appellees.—The rejection of the opinions of witnesses was proper: 1 Greenleaf, Evidence, § 440.

The question of the competency of the witness was for the court, and the discretion of the court is not reviewable, unless for gross abuse: Minnequa Springs Improvement Co v. Coon, 10 W. N. 502; Allen's Ap., 99 Pa. 201; First Nat. Bank of Easton v. Wirebach's Executor, 106 Pa. 37; Franklin Fire Ins. Co. v. Gruver, 100 Pa. 266; Hartman v. Ins. Co., 21 Pa. 466; Reber v. Herring, 115 Pa. 599; Coyle v. Com., 104 Pa. 117; Greenleaf, Evidence, § 440.

When an owner or operator of mines has employed a competent mine foreman, and accident results to a workman in the mines, from the negligence of such foreman, the common employer is not held liable in damages for the injury arising from the accident. Such negligence is held to be one of the necessary risks of the business which the workman takes upon him-

self: Waddell v. Simoson, 112 Pa. 567; Redstone Coke Co. v. Roby, 115 Pa. 364.

Want of ordinary care has not been established by the evidence : (1) For the reason that it has not been clearly shown that the deposit of the culm was the cause of the accident. (2) It has not been shown, by the production of any competent testimony, that, if the deposit of the culm at the place in question was the cause of the accident, such deposit was negligently made, in view of the thickness of the cover at or near that point and of the usual custom of disposing of the culm produced in the business of mining coal.    (3) It does not appear from any evidence in the case at what point of time the culm, which covered three acres, was deposited at or near the location of the accident, nor whether it was before or after the employment of the men working in the mines on Dec. 18, 1885.

But if it be granted that the evidence shows that sufficient care was not taken to prop the roof and that therefore the accident occurred, the case is within the line of decided cases in which owners are held not liable when the working of the mine is committed to the care of the official that the law requires them to employ: Redstone Coke Co. v. Roby, 115 Pa. 364; Waddell v. Simoson, 112 Pa. 567.

The negligence of the mine boss is that of a fellow servant which entails no liability on the company.    As to a driver boy the mine boss is a fellow servant: Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; Delaware & Hudson Canal Co. v. Carroll, 89 Pa. 374; Keystone Bridge Co. v. Newberry, 96 Pa. 246; Reese v. Biddle, 112 Pa. 72.

The deceased was fifteen years of age, and therefore must be presumed to have had capacity to be sensible of danger.    This presumption will stand until overthrown by proof of an absence of such discretion : Kehler v. Schwenk, 144 Pa. 348.

Furthermore this is not a suit by an infant injured, but by a parent who allowed a son to enter a dangerous employment and who must, therefore, assume the risks incident to the business : McCool v. Coal Co., 150 Pa. 641.

Opinion by Mr. Justice Green, October 2, 1893 :

In this case there was considerable testimony showing that in certain portions of the mine, not remotely distant from the

point at which the accident occurred, there was leakage of water, some of which was muddy, from the sides and roof of the mine, that there were cracks in the roof and that there was some cracking and crushing of the timbers of the mine. There was also testimony that the attention of the mining boss was called to these matters and that he promised to attend to them and put in more timbers. It was proved that some of these defects had existed for several months, but the men had continued their work as usual. There was no proof locating the exact place in the mine at which the water and sand broke through and caused the great destruction of life that ensued, nor, of course, was there any testimony as to the condition of the mine at that place. Nor was there any proof as to how the accident happened or what was the actual cause of the breach and flooding of the mine. But it was claimed that the defendant was negligent in not providing a safe place for their workmen to work in, and the proof of notice to the mining boss was relied upon to charge the company with notice of the defective condition of the mine, and consequent liability for the damages sustained by the plaintiffs. The learned court below was of opinion that the notice to the mining boss was insufficient to charge the defendant with liability to the plaintiffs, because he was only a fellow workman with the deceased miner, and therefore the defendant was not liable for his negligence, and that there was no sufficient evidence of negligence in other respects to charge the defendant with liability therefor. Having closely read the whole of the testimony and the able arguments of counsel for the appellant, we are constrained to say that in our opinion the case was correctly disposed of by the learned court below.

The fatal element in the plaintiffs' case, as it seems to us, is, that if there was negligence in not keeping the mine in a safe condition for the men to work in, it was the negligence of the mining boss who was a fellow workman with the deceased miner, and therefore not imputable to the defendant. It is true that, as to some of the defects, it was shown they had existed for several months, and it is contended that for that reason the case does not come within our decisions on that subject, but it is replied to this contention that the mine did not give way at those points but remained standing after the flood as it

was before, and also that whether the time was long or short it did not affect the application of the doctrine of non-liability for the negligence of a fellow servant.

We do not find in the record any evidence of notice to the company except the notice to the mining boss, and there was no proof that any members of the company had ever seen or visited the places where the defects in question existed. It was also the fact that the men continued to work in the mines after the notice the same as before, from which it is argued that the men did not regard them as serious. It was also fully proved that in all anthracite coal mines there is a constant leakage of water into the mines. An examination of the authorities shows that whether the negligence of the fellow workman continues for a long or short time, the application of the rule of non-liability is not affected. In fact there is just as much, perhaps more reason, for enforcing it where the time elapsed after notice is longer than where it is shorter. For if the defects warned against are serious and the mining boss does not correct them, it is the clear, indeed the urgent duty of the workman having knowledge to notify the principal, and if he does not do this, under all the authorities, he continues his work at his own risk. It is to be remarked also that this company employed a mine foreman such as they were required by law to employ, and that there was no testimony in the case impugning in the least degree his fitness or his qualifications for the position. In the case of Waddell v. Simoson, 112 Pa. 567, the plaintiff's son was killed by the fall of a slip or fault from the roof of the gangway at the edge of a breast. The negligence complained of was that the gangway, taken in connection with the width of the breasts opening out from it on both sides, was too wide to be safe without artificial supports or proppings. It was claimed that the defendants were bound to keep a safe place for their workmen to work in and had not done so, because they had not supported the roof of the mine at the place in question with suitable props and timbers. The court below sent the case to the jury notwithstanding the requests for charge of the defendants, and the jury rendered a verdict for the plaintiff. This court reversed the judgment without a venire. Our brother GORDON, delivering the opinion, said: " In the case of the Lehigh Valley Coal Company v.

Jones, 5 Norr. 432, as also in the Delaware & Hudson Canal Company v. Carroll, 8 Id. 374, it was held by this court that the mining boss is a co-employee with the other workmen engaged in a coal mine, and that, as a consequence, the owners of the mines are not responsible for damages to a fellow workman from his negligence. . . . The competency of the defendant's mining boss does not seem to have been questioned; but it is alleged that he was negligent in not having the roof of the gangway properly secured by props or other appliances which might have prevented the fall of the rock that killed the plaintiff's son. But that the employer cannot be made responsible for damages resulting to a servant from the negligence of a fellow servant, is a principle as old as the common law. Moreover, as the defendants had complied strictly with the 8th section of the act of March 3, 1870, in providing a practical and skillful inside overseer or mining boss, and as they had thus fulfilled the duty imposed upon them by the general assembly, it is not for this or any other court to charge them with an additional obligation. . . . Bosses, however well intentioned and skillful, cannot always be on the watch; occasionally they will fail in judgment, and at times may even be negligent; but of this the workman is quite as well aware as his employer, and in entering upon the employment of mining he must assume the risks that are ordinarily incident thereto, among which are those accidents that may result from the negligence of co-employees, of whom, as we have seen, the mining boss is one."

As the negligence complained of in the foregoing case was the omission to prop the roof with suitable timbers, it was a continuing omission from the time the mine was opened at the point where the fall occurred, but that circumstance did not affect the decision of the case, nor change in the least the application of the rule which relieved the defendant of liability on account of the negligence being that of a fellow workman.

In Redstone Coke Company v. Roby, 115 Pa. 364, the action was brought to recover damages for personal injuries caused by an explosion of gas; the plaintiff was a miner who worked in the coal mine of the defendant, and the negligence alleged was in not furnishing proper ventilation for the mine, and we held that, if the defendant's responsibility was to be measured " by the results, we would have little difficulty in arriving at such

a conclusion." But the defence was grounded upon the proposition that the defendant had employed a mining boss as required by the act of 1877, and had thereby fulfilled the measure of their obligation, and as he was a fellow servant of the injured miner, defendant was not liable. Mr. Justice PAXSON, delivering the opinion, said: "It has been held in a number of recent cases that the mine owners are not responsible for the negligence of their mining boss: Reese v. Biddle, 112 Pa. 72; Waddel v. Simoson, Id. 567. Reasonable care must be exercised in selecting a competent person for such a position, but when such care has been exercised the cases are clear that the company employing him is not liable for his negligence. This results necessarily from the act of April 28, 1877, P. L. 58, which imposes upon the company the duty of providing a mining boss. . . . The mining boss is therefore a creature of the legislature, selected by the mine owner in obedience to the command of the law, and in the interest and for the protection of the miners themselves. It has therefore been properly held that where the mine owners have exercised reasonable care in the selection of a competent mining boss, they are not liable for injuries resulting from his negligence. His co-employees take the risk of his negligence precisely as in other cases. If he is incompetent or careless they can at once discover it and notify the superintendent, while the owners, with every wish to protect the miners, have no such opportunities of information. It is very plain, as was held in Waddell v. Simoson, supra, that the operator of a coal mine fulfills the measure of his duty to his employees if he commits his work to careful and skillful bosses and superintendents, who conduct the same to the best of their skill and ability. More than this he cannot do, and with such duty performed, whatever of risk or danger remains must rest upon the miners themselves."

These remarks are as precisely applicable to the act of 1885, as they were to the acts of 1870 and of 1877. The fundamental idea as to all of them is that properly qualified persons, as designated in the several acts, shall be employed by mine owners with prescribed duties relative to the care and inspection of mines, and where this is done the mine owner has discharged his duty in this regard, and, if, having done so, accidents occur which can be traced to the carelessness or negligence of these persons, the owners are not liable.

There is no force in the contention that because, under rule 24 of the 12th article of the act of 1885, the miner must give notice of any apprehended danger to the mine foreman, therefore he is to be considered as the representative of the owner for all purposes, so as to charge the company with liability. No such provision is found in the act, and the duty to give such information was just as great before the act as after. The act simply embodied what was already a legal duty of the miner into the provisions of the statute, making it more precise and emphatic and bringing the performance of such duty more directly to the attention of the miner. The position of the mining foreman with relation to the owner was not changed by this provision. His duty was the same, with or without this provision, to wit, to give immediate attention to the apprehended danger, and take all proper measures to prevent its occurrence. The effect of his negligence in not correcting the defects or dangers complained of, would be precisely the same after as before the statute, and it would require a specific change of the law by statutory enactment, to impose liability upon the owner for his negligence when there was no such liability at the date of the passage of the act.

Nor is there any force in the contention that, several months before the accident, T. M. Williams was in the mine upon one occasion in company with Corrigan, the mine foreman, and made a remark that the roof was bad and some more timbers must be put in. Williams was not in any position in regard to the mine at the time of the accident nor for some months—two or more—before the accident. There is no proof that any notice was given to him of any defective condition of the roof or mine at the time spoken of. He merely made a remark to Corrigan that the roof was bad and that some more timbers should be put in. It was not at the place of the accident and it does not appear whether more timbers were put in or not. But when he did hold a position in the mine it was only as inside foreman, according to the testimony. G. T. Morgan was superintendent of the mine at that time. At the time of the accident Reese was inside foreman and Corrigan was the mine foreman. No notice was given to Reese as to the condition of the mine. But, as inside foreman, even if Williams had received notice and had remained in that position until the accident, he

was in the same position as the inside foreman in the case of Lehigh Valley Coal Company v. Jones, 86 Pa. 432. In that case the inside foreman " had the entire control of the inside operations in regard to the working men employed, and the ventilation, subject to orders from the general superintendent," yet we held that the company that employed him was not liable for his negligence.

It seems to us that the authorities already quoted embrace all the features of this case, and that they prevent any recovery. Some claim was made that the piling of the culm on the outside surface of the ground was proof of negligence such as would hold the defendant company liable. But there are several difficulties in the way of this theory. In the first place there is no proof that it was piled any differently from the usual method followed in the coal region. The accumulations of coal dirt are a necessary result of the mining operations. They must be deposited somewhere on the surface and as a matter of fact they always are. We discover no evidence of any departure from the usual methods observed in such cases. There was, in times of storm, a small stream that ran through the depression or gully over which the culm was piled, but it is not proved, and in fact is not credible, that when there was any water there it would penetrate into the solid ground and through a considerable depth of rock, rather than through the pile of loose culm lying on the surface. Again there is no proof that the culm pile was in any way the cause of the breach into the mine at the point far below the surface where the flood of water and sand broke through. It would be altogether unsafe to intrust such a question to a jury to be disposed of by mere conjecture without proof. If there were some kind of definite proof in the cause that would authorize a legitimate inference to this effect, there would be force in the contention that it should be sent to the jury. But we can discover nothing but a basis of mere surmise or conjecture in the testimony on this subject. The culm had been in place for years without producing any such result or any suspicion of such result. Its weight did not cause any falling in of the roof of the mine below it; there is no proof as to what was the condition of the mine at the place where the breach took place, and nothing but an inference that because the culm pile was on the surface

and the breach was at some point far down under rock and earth, could justify a verdict. But verdicts as to such matters must be founded on something much more substantial than mere inferences. There must be actual testimony tracing a connection as between cause and effect, in the case, before inferences of that nature can be permitted. All coal mines have water in them and timbers must be used to support the mines which sometimes crush, but the fact that the mine was still intact at those points after the flood, discredits entirely the theory that those conditions were the cause of the breach. We think the learned court below treated the case correctly in entering a judgment of nonsuit.

But in any event, supposing that the conditions in the mine below, resulting from the presence of water and the crushing of timbers, were indications of danger from the culm pile, the workmen had far better opportunities of knowing it than the owners, yet they gave no notice to the owners. They called the attention of the mine foreman to it, but neither he nor the men regarded it as of any material consequence, as they all continued their work in the mine. If the foreman neglected to inform the owners and the accident resulted from that neglect, the owners are not responsible.

We have examined and considered carefully the several assignments of error as to the rejection and admission of testimony, and think they are without merit.

The witness Gallagher who was offered as an expert had never been in this mine nor done any work in it or about it. He had heard a considerable part of the testimony of the witnesses, but not all; he had done some work in other mines, was a school teacher and occasionally lectured on mines and mining and gave instruction to persons desiring to become mine bosses; his knowledge of coal veins, and of overlying and underlying strata, was entirely theoretical. A very long hypothetical question was put to him, at the end of which he was asked to state what in his judgment was the cause of the breaking in of the roof at the point where the accident happened. He was asked by the court whether he had ever examined this property at this place, and he said "No."

" Q. Did you ever work in this mine?  A. In the mines of this county, no, sir."

He was also asked whether he had ever examined the culm pile, and he said, No, he only knew what the witnesses said about it. The question was objected to on the ground, among others, that he had not exhibited any such qualifications as would entitle him to answer the question as an expert. The question was rejected as we think with entire propriety. The breaking in of the water and sand was of course due to the presence, at the point of the breach, of a great body of water and sand, and an insufficient thickness of rock at that point to restrain it. But how the water and sand got there and why the rock was not thick enough to restrain were matters which the witness could not know, more that any indifferent person. Neither could he tell as a fact whether the roof was broken in at all, and there was no testimony to prove that fact in the case. If such was the fact it was not to be established by the mere opinion of anybody. If there were facts in evidence tending to show that fact, it was for the jury to know of them and to judge of them. In the case of Fire Insurance Co. v. Gruver, 100 Pa. 266, we said, GORDON, J.: " The opinion of a witness who neither knows nor can know more about the subject-matter than the jury, and who must draw his deductions from facts already in the possession of the jury, is not admissible : Hartman v. Insurance Co., 9 Harr. 466. Were it otherwise the opinions of the jurors upon the most obvious facts might be always shaped for them by the testimony of so-called experts, and thus would a case be constantly liable to be determined, not by the opinions and judgment of the jury, but by the opinion and judgment of witnesses."

The next question propounded to the same witness covered by the eighth assignment, required his opinion upon a condition of things with which he had shown no familiarity or even acquaintance, and the court was certainly right in rejecting the question. The same remark applies to the testimony rejected under the second assignment, the fourth, and the ninth. The question of prudence in the ninth was the very question which the jury would have to decide, and they could only decide that from facts and not from opinions. The court was entirely right in saying, " the testimony of an expert is not admissible to establish a fact deducible from evidence, which the jury is just as competent to decide as the witness." The question put to

Winters in the fifth assignment, " What brought down the roof here in this mine where the accident happened, if you know ? " was also properly rejected. The witness was working in the third chamber, which was at quite a distance from the fifth, at the end of which the cave-in was supposed to have occurred. He spoke of seeing cracks in the roof of the mine where he was working and water flowing there, and that he had told Corrigan of it, and that the roof would come down, but he also said he went in after the accident to the same place and found it all standing. He did not say he had ever been at the place where the breach occurred, and of course did not know what brought the roof down there, or that the roof was brought down at all, or what was the manner in which the breach occurred. Certainly he was not competent to testify either as a miner or an expert in answer to the rejected question. The other assignments are without merit and have already been sufficiently considered as to their substance.

Judgment affirmed.

[Marked to be reported.]