## HOLLY v. McDOWELL COAL & COKE CO.

(Circuit Court of Appeals, Fourth Circuit. March 10, 1913.)

No. 1,145.

1. EVIDENCE (§§ 29, 43*) — JUDICIAL NOTICE — STATUTES AND DECISIONS OF STATE COURTS.

In determining a demurrer to a declaration, a federal court will take judicial notice of the statutes and decisions of the Supreme Court of the state construing them.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 36, 37, 39, 43–46, 48, 62–65; Dec. Dig. §§ 29, 43.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. COURTS (§ 366*)—FEDERAL COURTS—RULES AND DECISIONS—FOLLOWING DECISIONS OF STATE COURTS.

In general, the courts of the United States will adopt and follow the decisions of the state courts in questions which concern merely the Constitution and laws of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468.]

3. MASTER AND SERVANT (§ 118*)—INJURIES TO SERVANT—COAL MINES—REGULATION—STATUTES—EFFECT.

Code Supp. 1909 W. Va. c. 15H (sections 400–454), regulating the operation of coal mines within the state, and providing for the appointment of inspectors, foremen, etc., to be employed by the operator, but responsible to the state for the performance of their duties, superseded the common-law rules governing master and servant with reference to negligence in the operation of such mines, and define specifically the duties of the one to the other.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 202, 209; Dec. Dig. § 118.*]

4. MASTER AND SERVANT (§ 199*)—INJURIES TO SERVANT—COAL MINES—REGULATION—STATUTES.

Under Code Supp. 1909 W. Va. c. 15H (sections 400–454), regulating the operation of coal mines, and requiring the operators to place the entire internal management of the mine in control of an inside foreman and fire boss, whom he is required to select according to certain statutory qualifications, but who are not responsible for their acts to the operator, such foreman and fire boss are fellow servants of the miners so far as the performance of their duties is concerned; the operators' liability lying only in their original selection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 491; Dec. Dig. § 199.*]

5. MASTER AND SERVANT (§ 190*)—DEATH OF SERVANT—COAL MINES—OPERATION—NEGLIGENCE OF FOREMAN—STATUTES.

Under Code Supp. 1909 W. Va. c. 15H (sections 400–454), regulating the operation of coal mines, and providing that the inside workings should be under the exclusive control of a mine foreman having specified qualifications and a fire boss, who are not responsible for their acts to the operator, there being no claim, in an action for death of a miner due to the fall of material from the roof of an entry, that the mine foreman had not the qualifications specified by the statute, the operator was not liable for intestate's death, because it was due to the foreman's negligence

*For other cases see same topic & § NUMBER in Dec. & Am. Digs 1907 to date, & Rep'r Indexes

in failing to discover the dangerous portion of the roof of the entry and repair the same.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*]

**6. CONSTITUTIONAL LAW (§ 238*)—EQUAL PROTECTION OF LAWS—COAL MINING—REGULATION.**

Code Supp. 1909 W. Va. c. 15H (sections 400–454), regulating the operation of all coal mines, and placing the entire internal control in a mine foreman employed by the operator having specified qualifications and a fire boss, who are responsible for their acts, not to the operator, but to the state, is not unconstitutional, as depriving miners injured or killed by the negligence of the mine foreman of equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 688–699, 706–708; Dec. Dig. § 238.*]

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; Benjamin F. Keller, Judge.

Action by Lee Holly, as administrator of Oscar Holly, deceased, against the McDowell Coal & Coke Company. Judgment for defendant, and plaintiff brings error. Affirmed.

William H. Werth, of Tazewell, Va., for plaintiff in error.

Z. W. Crockett and Joseph M. Sanders, both of Bluefield, W. Va. (Sanders & Crockett, of Bluefield, W. Va., on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and BOYD and DAYTON, District Judges.

DAYTON, District Judge. Oscar Holly, a coal miner, employed by the defendant, was killed by falling slate near the mouth of what is called the "Kentucky entry" to defendant's mine. The plaintiff, as his administrator, instituted this action in the court below. A demurrer to his declaration and each count thereof was sustained, and this writ of error thereupon sued out.

The declaration originally contained four counts. By amendment two additional ones were added. The general allegations of fact as set forth in the first count are that on January 2, 1912, decedent was assigned to a working place in the mine near a mile inside from the drift mouth, and worked there on the 2d, 3d, and until the evening of the 4th, when, going along this entryway with the purpose of leaving the mine, within about 100 yards of its mouth, he was instantly killed, without fault on his part, by this loose slate falling upon him; that he had no knowledge or notice as to the unsafe condition of this roof, nor was there any obvious or open indication of danger therefrom. It is further alleged in this connection that this Kentucky entry was not only used, at the place where intestate was killed, as a regular passway by all miners in going to and from work, but that it was also used for the operation of an electric railway by means of which coal was hauled out of the mine, by reason whereof employés passed back and forth under the roof of the entry at regular intervals all day

long. Further, it is charged that a statute of the state, enacted for the better securing the safety of persons employed in coal mines, required of the defendant, among other things, the employment of a competent and practical mine foreman, whose duty it should be to watch over these traveling ways, and see that all loose coal, slate, and rock in the roof be removed or secured. It is thereupon charged that defendant did not have and had not employed, at the time in question, a competent and practical overseer to perform such duties; "that defendant did have an employé selected and designated by it as its mine foreman," but he "was neither competent nor practical," by reason whereof "he ignored facts and conditions which had, long prior to the killing of the intestate, given ample warning that the roof over the entry in question at the point in question, was in a dangerous condition and liable to fall upon employés passing along under it"; that "repeated incidents had occurred from time to time, covering a period sufficiently long prior to the death of intestate to have given ample knowledge and notice to said mine foreman of the dangerous condition of the roof of said entry at and along near the point where intestate was killed, had he been a competent and practical inside overseer"; and it is thereupon charged that intestate's death was due to the negligence of defendant in failing "to employ and have a competent and practical inside overseer, as was its duty to do under and by force of the statute aforesaid."

[1, 2] It is not necessary at this point to consider the allegations of the four other counts. They will be referred to hereafter. In considering this demurrer, we must take judicial knowledge of the statute and the decisions of the Supreme Court of Appeals of the state construing it. The courts of the United States, as a general rule, adopt and follow the decisions of the state courts in questions which concern merely the Constitution and laws of the state. Bucher v. Railroad Co., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795.

Turning to this statute (chapter 15H, W. Va. Code, Supplement 1909, p. 44), it is apparent that, recognizing the hazardous conditions attending the coal mining business, the state has undertaken in a measure the control of it, and prescribed the conditions under which such operations may be conducted. It has established an executive department for the purpose, requires the chief thereof to be a citizen of the state, competent, having had at least eight years' experience in the working, ventilation, and drainage of coal mines in the state, with practical and scientific knowledge of dangerous gases found in mines, and with full power to examine any and all mines. It divides the state into twelve mining districts, and directs the appointment of a mine inspector for each of these districts, who shall be a citizen of the state, a miner of at least six years' experience, having practical knowledge of mining, ventilation, and gases. These officers are paid salaries by the state. Inspection of each mine is required to be made by them once every three months, and oftener, if called upon in writing by ten men working in the mine. Monthly reports of these inspections are required. The law further sets forth minute provisions as to the furnishing of plans of the mine and of new openings,

for the installation of speaking tubes, signaling apparatus, safety gates, traveling ways, and hoists in shaft mines; also for the employment of competent engineers for hoisting machinery and regulating how many at a time and under what conditions men shall be lowered into such mines, the use of slopes, engine planes, motor roads, refuge holes, appliances to be furnished for ventilation, the transportation and use of powder in the mine, the control of gases, and many other things too numerous to set forth. Failure to comply with each and all the things required of the operator involves severe criminal penalties and subjects his mine to be closed by the chief of the mine department.

One of the requirements of him is material here. He must "employ a competent and practical inside overseer, to be called mine foreman, who shall be a citizen of this state, and an experienced coal miner, or any person having five years' experience in a coal mine," whose duties in detail are set out in the statute, among which are to remove all loose coal, slate, and rock from the roof in the working places and along the haulways, and furnish necessary props, caps, and timbers. He must see to it that every person employed to work in the mine shall, before beginning to work therein, be instructed as to the particular danger incident to his work in such mine, and be furnished a copy of the mining law of the state and of the rules of such mine. He is subject to fine and imprisonment if he fails to perform these duties. Still another provision requires the operator, in case gases appear in his mine, to employ a fire boss, who, too, must be a citizen, an experienced miner, whose duties are defined, and who is subject to criminal liability if he neglects to perform them. Neither of these men, the foreman and the mine boss, are subject to orders from the operator as to their duties. The operator, no matter how competent, cannot himself perform these duties. He must employ experienced miners to do so. Thus it will be perceived that the state has assumed, to a considerable extent, the control and management of the coal operator's business and has placed its conduct in the hands of the miners themselves. The twelve mine inspectors and the mine foreman and fire boss in each mine, by this law, must come direct from the miner class, and are answerable, not to the operator, but to the state, for neglect of duty.

[3] It is further apparent that it is the design and purpose of this statute that it shall be a code of law itself, providing what shall and what shall not be done to insure the health and safety of those engaged in this hazardous business of mining coal. It has set aside the common-law rules governing master and servant as regards negligence in this particular industry, and has undertaken to define specifically the duties of the one to the other.

[4] As we have hereinbefore set forth, it requires of the master the equipment and material necessary to ventilate the mine, render it as near as possible free from noxious gases, provide for the safe transportation of the workmen in the mine, and facilities for the frequent examinations to ascertain whether such and other requirements are complied with. It then requires the master substantially to turn over

the internal management of the mine to these two men, the foreman and the fire boss, who, under penalties prescribed, must see that the equipment and material so furnished by the master is installed and properly operated. While the master is permitted to employ these men, yet their required qualifications are distinctly set forth, and the Supreme Court of Appeals of the state has very properly held, construing the statutes, that inasmuch as their acts are not under the control of the master, and because they must be selected from the miner class, they must be held coservants of the miners, and the extent of the master's liability lies in their original selection; that is, that he must see to it that their qualifications are such as are required by the statute, and that, so far as their control of the internal workings of the mine is concerned, the state, by inspection, by defining their duties and subjecting them to penalties, has undertaken to compel the careful performance of their trust.

The decisions of the state are uniform as to these rulings. Williams v. Thacker Coal & Coke Co., 44 W. Va. 599, 30 S. E. 107, 40 L. R. A. 812; McMillan v. Coal Co., 61 W. Va. 531, 57 S. E. 129, 11 L. R. A. (N. S.) 840; Squilache v. Tidewater Coal & Coke Co., 64 W. Va. 337, 62 S. E. 446; Bralley, Adm'r, v. Tidewater Coal & Coke Co., 66 W. Va. 278, 66 S. E. 684; Helliel v. Piney Coal & Coke Co., 70 W. Va. 45, 73 S. E. 289; May v. Davis Coal & Coke Co. (W. Va.) 76 S. E. 342. To the same effect are the Pennsylvania decisions, from the laws of which state this statute was largely adopted. Delaware Canal Co. v. Carroll, 89 Pa. 374; Red Stone Coke Co. v. Roby, 115 Pa. 364, 8 Atl. 593.

[5] From an examination of the first count in the declaration here, it is apparent that negligence is sought to be imputed to the defendant by reason of the character of its mine foreman. It alleges that it did not have and had not employed at the time of the accident a competent and practical inside foreman; that it did have an employé selected and designated by it as its foreman, but charges that he was not competent or practical. It bases this opinion or conclusion of the pleader upon the charge that:

"He ignored facts and conditions which had *long prior* to the killing of intestate, given ample warning that the roof was in a dangerous condition and liable to fall upon employés passing along under it; that repeated incidents had occurred from time to time, covering a period sufficiently long prior to the death of intestate, to have given ample knowledge and notice to said mine foreman of the dangerous condition of the roof of said entry."

There is no charge here that he was not a citizen of the state, was not an experienced coal miner, or a person having five years' experience in a coal mine, or that he was physically, mentally, or by reason of his habits disqualified to discharge the duties of this position. The sum total of the allegation is that the slate had been loose for a period long enough for him to have discovered it, and, because he did not, he was necessarily incompetent and impractical. This is a non sequitur. The most careful and competent men are frequently guilty of oversight. The "repeated incidents," too, charged to have given ample notice of the condition of this roof, are not set forth; but,

per contra, it is alleged that this loose slate was in a main entry, used constantly by experienced miners in going to and from their work, no one of whom is charged with having discovered it. We cannot, therefore, disagree with the learned judge below, who sustained the demurrer to this count.

The second count charges negligence to the defendant because of its "omission of general supervision over the condition of the roof." As we have indicated, the statute expressly required this supervision on the part of the foreman, and the operator is not liable for his failure to exercise it. The third, fourth, and fifth counts are based upon similar erroneous assumptions of duty and obligations due from the master to his servant, which, by common law, might be relied on, but under the provisions of this statute are wholly inapplicable.

[6] The sixth count assails the constitutionality of the statute, as depriving the plaintiff and his intestate of "the equal protection of the laws" under the fourteenth amendment of the federal Constitution. The right of the states to pass laws of this character has been so well settled by the Supreme Court that further discussion on our part is unnecessary. Tinsley v. Anderson, 171 U. S. 101, 18 Sup. Ct. 805, 43 L. Ed. 91; Watson v. Maryland, 218 U. S. 173, 30 Sup. Ct. 644, 54 L. Ed. 987; Consolidated Coal Co. v. People of Illinois, 185 U. S. 203, 22 Sup. Ct. 616, 46 L. Ed. 872; Wilmington Star M. Co. v. Fulton, 205 U. S. 60, 27 Sup. Ct. 412, 51 L. Ed. 708.

We find no error in the judgment rendered by the court below, and it is therefore affirmed.