# CHARLESTON

## McMILLAN v. COAL CO.

Submitted January 22, 1907.     Decided March 12, 1907.

1. MASTER AND SERVANT—*Mine Boss—Negligence—Liability of Master.*

A mine boss appointed pursuant to statute is not, merely from his position as such, the servant of the coal mine owner outside his duties specified in the statute, and such owner is not responsible for his orders to servants of such owner, or his negligence resulting in injury to them. (p. 533.)

2. Same.

   To bind a master for damage to his servant coming from the or-
der or direction of an employee, it must appear that the person
giving such order or direction had authority from the master to
give it.   (p. 534.)

(Poffenbarger, Judge, Absent )

Appeal from Circuit Court, McDowell County.

Action by John McMillan against the Middle States Coal
& Coke Company.  Judgment for plaintiff, and defendant
brings error.

*Reversed.*

Henritze & Henritze, for plaintiff in error.

J. Graham Sale, for defendant in error.

Brannon, Judge:

John McMillan, an employee in the coal mine of Middle
State Coal & Coke Company, received a great personal
injury from explosion of dynamite caps used in shooting
down coal in that mine, and in an action against the company
he recovered a verdict and judgment for $4,000, and the com-
pany brought the case to this Court.

The defendant moved the court to strike out the plaintiff's
evidence and direct a verdict for defendant, but the court,
refused to do so.  The defendant gave no evidence at all.
The only evidence for the plaintiff was given by himself.
This motion to strike out seems to involve all that need be
discussed.  The plaintiff states that he was employed to load
coal in cars in the mine, and that he was working with an
Italian who used dynamite in shooting down the coal, and
that he, the plaintiff, had nothing to do with shooting down the
coal, or in using the dynamite, and that he had no experience
in the use of dynamite, and knew nothing of its dangerous
properties.  The mine boss directed the plaintiff to go to a box
and get some dynamite caps and take them to the Italian, and
under such direction he went to the box and searched for the
caps in it.  He took up some of the caps in his hand and was
taking them out of the box and from some cause or other
they exploded and hurt him.   The plaintiff claims that he
knew nothing of the dangerous property of dynamite, and
that therefore the company should have warned him of the
danger, and should have given him instructions how to handle

it, but that the mine boss failed entirely to do so. The defendant claims that before it could be called on to warn and instruct it must be shown that the company or its officer knew of McMillan's ignorance of the dangers of dynamite, and it is not shown. To this the plaintiff would reply that McMillan was taken from his usual line of labor, loading coal, to another and different and more dangerous line, and that by the law that fact dispenses with proof that the company knew of McMillan's ignorance of dynamite. It seems to me that we need not discuss those questions. The first question is, who gave the order to McMillan to get the dynamite caps? The mine boss. Not a bit of authority in him to so order McMillan is shown. It was not within his statute duties. In fact, it is not shown what was his authority or that the company ever gave him any authority. The evidence simply calls him a "bank boss." We suppose that he is a mine boss appointed by the company under the mandate of the statute in the Code, Edition of 1899, Appendix, page 1052, Anno. Code 1906, section 410. That appointment did not give him authority to order McMillan to get the caps. His act would not bind the company. Assume that McMillan was working outside the line of labor for which he was employed, and sent by the mine boss to a new, a different, a dangerous service; still it must appear that the order to get the dynamite was the company's order. "Where the injury was received by the servant while doing work outside the scope of his employment, it often becomes a material question whether he was acting under proper authority, for it is clear, upon general principles, that negligence cannot be predicated of the master's omission to instruct a servant as to work which he was neither expected nor ordered to do." "As in the case of an order given by a superior employee in respect to matters within the scope of the original employment of the injured servant, the master is not bound by an order of the kind considered in the present chapter, unless it was one which the directing employee had authority to give. Where the servant, in doing work outside the scope of his employment, was acting without proper authority, it is clear that the failure to give him instructions cannot be imputed to the master as negligence." 1 Labatt, Master and Servant, sections 240, 457. "The mere assumption of an employee of

the power to control his fellows, without a delegation of such power, by the employer, will never render the employer liable for the orders of such subordinate and if an employee sees fit, voluntarily, to recognize such self-constituted authority, he assumes the risk of obedience, or should look to such employee for redress." White on Personal Injuries, section 222. Thus we see that one giving orders must have authority from the master. We held in *Williams* v. *Thacker Coal Co.*, 44 W. Va. 599, that a mine boss is a fellow servant with the other employees, and that when the coal operator has complied with the statute by making a fit appointment, his duty is at an end, and he is not responsible for damages resulting from the negligence of the boss. It has been held elsewhere that the coal operator is not responsible even for those acts which fall within the scope of the duties of the mine boss, though resulting from his negligence. *Waddell* v. *Simpson*, 112 Pa. 567; *Lehigh Valley Coal Co.* v. *Jones*, 86 Pa. 432; *Delaware Canal Co.* v. *Carroll*, 89 Pa. 374; *Lineoski* v. *Susquehanna Coal Co.*, 157 Pa. 153; *Reese* v. *Biddle*, 112 Pa. 72. These cases are found in 2 Labatt, Master and Servant, note (o) on page 1451. But now with special eye to the question whether the coal operator must answer for the order of the mine boss. He is really the representative of the state appointed for the protection of the lives of the miners. He has been said not to be the officer of the corporation. The company was bound to appoint him whether it would or no. He is put into the mine by the power of the state to watch the condition of the mine, to hold the mine operator up to his duty in certain things. The statute prescribes certain duties for him. He has no others. He has power to watch the condition of the mine in certain respects, to detect its wants, to demand their cure, and to bring the mine operators up to the standard required by the act. It has been said that he performs functions for the state, in behalf of the miners, and is not the representative of the coal operator, unless it be shown that the coal operator, by his own act, has committed other duties and granted powers to him. The Pennsylvania court in *Delaware Canal Co.* v. *Carroll*, 89 Pa. 274, said: "There is no room for the allegation that a mining boss under the mine ventilation act of 1870 is an agent of the mine owner or a co-employer. He is clothed with no power

of engaging and discharging miners and the laborers at pleasure. He is merely a fellow servant with the miner. He is nowhere in the act designated as the agent of the owner of the mines. His duties are specified in the same manner that the duties of the engineer are specified in the 16th section, and as the duties of other employees are defined in various other sections. He has no general power of control. His duties are confined to special matters. That they are different from those of others of his fellow co-laborers, or even that they are of a higher grade, does not matter." In *Red Stone Coke Co.* v. *Roby*, 115 Pa. 364, the court declared that the mine boss "is a creature of the legislature, selected by the mine owner in obedience to the command of the law, and in the interest and for the protection of the miners." In the Colorado case of *Coal Co.* v. *Lamb*, 6 Colo. App. 255, the court said: "We are unable to see how he is, in any sense, either as vice principal or otherwise, the representative of the master, or how he can stand in any other relation to his co-laborer than that of a fellow servant." This coal company had a superintendent. And as said in *Lehigh Valley Coal Co.* v. *Jones*, cited, this mine boss did not supersede the superintendent. It was for the superintendent to give the order. He had no part in this transaction. The statute does not make the mine owner liable for the acts of the mine boss. In the Colorado case of *Coal Co.* v. *Lamb*, 6 Colo. App. 255, it is held: "The mine boss, under the coal mining act of 1885, is, in the absence of proof that he had other authority than that derived from the statute, a fellow servant with the miners, and the mine owner is not responsible to the workmen for injuries resulting from the negligence of the mine boss." The court said "there is nothing in the record which discloses his relation to the company to be other than what was derived from his statutory authority." So we say in this case. This ends the case. There is positively no authority shown in this mine boss to bind the company for his order to McMillan or for the mine boss' failure to instruct McMillan as to the dynamite. Counsel would argue that the act for appointment of the mine bosses has only taken from the operator some duties, those specified in the act, but has left other duties on the operator, and that the duties of the mine boss specified in the statute have no relation to the

act of the mine boss in this case, giving the order and failing to give warning to McMillan, and that this is a non-assignable duty; but the trouble is the company is not bound for the act of this mine boss or for his omission.

Furthermore, the authorities above cited hold the mine boss a fellow servant with McMillan, and say that the company is not liable for his negligence or omission. What is it that is claimed to have caused the injury to McMillan? The act of the mine boss in ordering him to different work and particularly in failing to instruct him of the danger of dynamite—in other words, the negligence of the mine boss. How can you make the company liable for the negligence of a fellow servant? If servant as to statutory duties, the court regards the mine boss a fellow servant. This act was not a statutory duty, and his authority as to it is not shown, and even then, he would be a fellow servant. From these views we must say that the circuit court should have struck out the evidence of the plaintiff and directed a verdict for the defendant, and therefore we reverse the judgment and render judgment for the defendant. *Anderson* v. *Tug R. Co.*, 53 S. E. 713.

*Reversed.*

Brannon, Judge:

In a petition for rehearing it is stated that the person called boss was not a mine boss. We do not know from the record. Say that he was not. What his exact position or authority? It is not disclosed. He was an employee, and a fellow servant, for whose act or negligence the defendant cannot be bound. *Jackson* v. *Railroad Co.*, 43 W. Va. 380; *New Eng. Co.* v. *Conroy*, 175 U. S. 323.