# CHARLES TOWN

SQUILACHE *v.* TIDEWATER COAL & COKE CO.

Submitted March 26, 1908.    Decided September 11, 1908.

| 64 | 337 |
|----|-----|
| 64 | 441 |
| e65 | 256 |

| 64 | 337 |
|----|-----|
| f66 | 280 |
| j66 | 284 |

1. MASTER AND SERVANT—*Actions for Injuries—Declaration—Sufficiency.*
   In an action by a servant against the master, it is generally necessary to distinctly allege the duties of the defendant to the plaintiff charged to have been violated; but if what is averred in the declaration, in connection with the manner of averring a breach of those duties, sufficiently shows what such duties are, the declaration will be regarded good on demurrer, the allegations of duty in such cases being superfluous.   (p. 338.)

2. EVIDENCE—*Judicial Notice.*
   When such duties are statutory, and the facts are alleged from which those duties arise, the court will take judicial notice of the statute.   (p. 339.)

3. ALIENS—*Right to Sue—Personal Injury Action.*
   As a general rule an alien, not an enemy, may maintain in the proper courts suits to vindicate his rights and redress his wrongs, including actions for personal injuries.   (p. 340.)

4. MASTER AND SERVANT—*Duty to Furnish Reasonably Safe Place to Work.*
   A reasonably safe place to work, required of the owner or operator of a coal mine, with respect to ventilation and the accumulation of dangerous gases therein—after he has provided ample means of ventilation and employed a competent mine-boss and fire-boss, as required by sections 409 and 410, chapter 15H, Code 1906—means in the eye of these statutes, a reasonably safe place in the first instance; and the subsequent negligence of such mine-boss or fire-boss in allowing the accumulation in the mine of noxious gases in dangerous quantities will be regarded as the negligence of a fellow-servant of the mine, not imputable to the owner or operator, and as a risk assumed by such miner at the time of his employment, and such owner or operator will not be liable in damages for personal injuries sustained by him therefrom.   (p. 340.)

5. SAME—*Fellow Servants—Competency.*
   Such fire-boss is not shown to be incompetent by evidence of his want of knowledge of the use of an anemometer, such instrument not being one of those required by the statute to be used by him in the operation and ventilation of the mine.   (p. 340.)

6. SAME—*Negligence.*
   Stoppage, for brief periods, of the fan on the outside of a coal mine provided by the owner or operator for the ventilation thereof, during suspension of work therein, whether for the purpose of mak-

ing needed repairs or otherwise, will not constitute such evidence of negligence of the owner or operator as will render him liable in damages for injuries sustained by a miner employed therein from an explosion of gas in the mine, occuring on a subsequent day. such negligence, if any, being properly imputable to the mine-boss or fire-boss, fellow-servants of such miner.   (p. 341.)

7.  TRIAL—*Instructions—Abstract Propositions.*

Instructions, too general in terms and containing no sufficient reference to any evidence to which they would be properly applicable, amount to mere abstract propositions, and should be rejected. (p. 349.)

8.  APPEAL AND ERROR—*Harmless Error—Instructions—Rejection.*

The rejection of an instruction, although correct, if the subject thereof has been sufficiently covered by another instruction given, will not constitute reversible error.   (p. 352.)

Error to Circuit Court, McDowell County.

Action by Dominick Squilache against the Tidewater Coal & Coke Company.   Judgment for plaintiff, and defendant brings error.

*Reversed.   New Trial Awarded.*

RUCKER ANDERSON, STROTHER & HUGHES, for plaintiff in error,

STROTHER, TAYLOR & FLANNAGAN and R. R. SMITH, for defendant in error.

MILLER, JUDGE:

The plaintiff sued for injuries sustained in the coal mine of the defendant.   The declaration, in three counts, the demurrer to which was overruled, after averring defendant's ownership of the mine, servantcy of plaintiff as a miner therein, and alleged duties of the defendant with respect to the accumulation of fire damp, gases, fumes and vapors, charges, by way of assigning breach thereof, in the first count, that it negligently and knowingly permitted to accumulate in said mine where plaintiff was employed, without knowledge thereof on his part, fire damp, fumes, gases and vapors, which, becoming ignited, exploded with great power and violence, and burned with great heat in and about where plaintiff was engaged in the discharge of his duties; in the second count, that it negligently failed to employ a competent fire-boss, to keep at said mine safety lamps, to have said

mine examined and notice of the accumulation and existence therein of fire damp and other dangerous gases given to its employees, to ventilate said mine, to provide the necessary traveling ways and other means of escape, to provide ample means of ventilation, and to cause air to be circulated through the entries and headings so as to dilute, render harmless and carry off said dangerous and noxious gases, and by reason thereof the same became ignited and exploded with great power and violence and burned with great heat in and about where the plaintiff was engaged in the discharge of his duties; in the third count, that the defendant negligently failed and refused to employ a fire-boss, and to provide ample means of ventilation, and to cause the air to circulate through said mine and the working part thereof in sufficient quantities to dilute, render harmless and carry off the dangerous gases known by the defendant to be generated in dangerous quantities in said mine, and negligently and knowingly permitted such fire damp and other dangerous gases to accumulate and exist in said mine, without plaintiff's knowledge, and to become ignited and to explode with great power and violence and burn in and about where plaintiff was engaged in the discharge of his duties; whereby as alleged in each count, the plaintiff was then and there "bruised, burned, wounded, suffocated and injured," laying his damages at ten thousand dollars. The alleged duties of the defendant charged to have been violated are not very distinctly averred in the second and third counts; but what is averred, taken in connection with the manner of averring a breach of those duties, we think renders the counts sufficient. The allegations of duty are superfluous in such cases. 6 Thomp. Neg. section 7458. The first count, containing an averment of the statutory duty, is in the form given in Hogg, Pl. & Forms 373, adjudged sufficient in *Berns* v. *Coal Co.*, 27 W. Va. 285. But the facts being alleged from which the statutory duties arise, the court will take judicial notice of the statute, a breach of those duties being averred. *Moundsville* v. *Velton*, 35 W. Va. 217.

The principal ground of demurrer relied on is that the duties directly or impliedly alleged, failure to perform which it is charged resulted in the injuries complained of, are those which the statute, sections 409 and 410, chapter 15H, Code 1096, imposed upon the mine-boss or fire-boss, fellow-servants of the

plaintiff, and for whose negligence it is argued the defendant is not liable.    But it is averred, in the second count, that the defendant failed to employ a competent fire-boss, and, though not in terms, it is substantially alleged that it failed to employ a competent mine-boss; and, it being alleged in the third count that the defendant negligently failed to ventilate or to provide ample means of ventilation and to cause air to be circulated, etc., thereby negativing a discharge of defendant's duties in the premises, we think these counts are substantially good on demurrer.    The proposition for which the defendant contends, therefore, properly arises on the trial of the facts.

Another preliminary question presented here, but apparently not seriously relied on by the defendant, relates to the rejection of two special pleas tendered, challenging the right of the plaintiff, a citizen and subject of the Kingdom of Italy, to sue in the courts of this state.    These pleas were properly rejected.    An alien, not an enemy, may take and hold, by inheritance or purchase, real estate within this state. Such right is written in our Constitution and statute law. Const., section 5, Art. II; Code 1906, sections 3018, 3019. And the general rule is that he may maintain suits in the proper courts to vindicate his rights and redress his wrongs, including actions for personal injuries.    2 Kent. Comm., section 62; 2 Cyc. 107 and notes; *Succession of Rixner*, (La.), 32 L. R. A. 177; 1 Bouv. L. Dict. 130.

There was no attempt to support by proof the plaintiff's case except by evidence of the presence and explosion of gas in the mine, some evidence of the ignorance of the fire-boss in the use of the anemometer, and that the large fan on the outside of the mine was shut down for a part of the day previous to the accident, when the mine was not being operated, without leave of the proper authority.    It is claimed also that the presence in the mine of gas in dangerous quantities was evidence of want of capacity of the means of ventilation.    There was, however, positive and uncontradicted evidence of the experience of the fire-boss, and of his skill and ability to detect gas in dangerous quantities by the use of a safety lamp, and that the means of ventilation were ample and had always before produced an abundant supply of air in the mine.    The view we take of the case renders it unnecessary to refer to the evidence except in this general way.    The plaintiff below

had a verdict and judgment thereon against the defendant for $3,000, to reverse which various rulings of the circuit court on the trial the defendant has brought the case here upon writ of error. The points relied on are covered by the motion to exclude the plaintiff's evidence, objections to the giving and refusing of instructions, and finally by the motion of defendant to set aside the verdict and award it a new trial and for judgment for defendant notwithstanding the verdict.

The defense to the action in the court below, as it is here, was, first, that the injuries sustained were due to a powder explosion, or a blow-out shot, in room number 27, where the plaintiff was when he received his injuries; second, that, although the injuries sustained may have been the result of a gas explosion, the defendant, having provided and maintained ample means ef ventilation and employed a competent mine-boss and fire-boss, as required by law, discharged its whole duty to the plaintiff, any negligence being that of the mine-boss or fire-boss employed, fellow servants of plaintiff, and for which defendant is not liable. There was little evidence to support the first defense, except the presence in the room, after the explosion, of an exploded powder can, and that like serious injuries were not sustained by others in as close proximity as the plaintiff to the place where the gas was ignited. There is positive evidence of the presence of gas in dangerous quantity in room number 46, from 150 to 190 feet from room number 27, and the ignition thereof from the lamp of another miner almost simultaneously with the explosion at room number 27, burning also a miner at work in room number 48. It is claimed by plaintiff that this gas, ignited in room 46, exploded in room 27, injuring him. There is a conflict of evidence, therefore, preponderating in favor of the plaintiff; and we cannot disturb the verdict of the jury thereon, manifestly against the defendant.

The last is the principal defense. As to it, the position of the plaintiff is, first, that defendant's duty to plaintiff was not fully discharged, as claimed; that, besides what was done, the defendant was obliged, at common law as well as by the statute, in the operation of the mine, to see that the air was "circulated around the main headings and cross-headings and working places" in the mine "to an extent that will dilute and render harmless and carry off the noxious and dangerous

gases therein," and thereby to provide and maintain continuously a reasonably safe place to work, which it neglected to do; and, second, that his injuries were due to the alleged incompetency of the fire-boss, and the shutting down of the fan on the outside of the mine on the day preceding the accident, resulting it is claimed in the unusual accumulation of gas in the mine and the explosion thereof. The evidence of the defendant shows the employment and competency of the mine-boss, and there is none to the contrary. We need give this subject no further consideration therefore.

Three questions, then, are presented for determination: What was the extent of the duty of defendant with respect to ventilation of the mine? Was the fire-boss incompetent? And, lastly, was it an act of negligence, chargeable to the defendant and contributing in an approximate degree to the injuries of the plaintiff, to shut down the fan on the outside of the mine the day preceding the accident? We must consider them in the light of our statute, referred to, and previous adjudications thereon.

It seems to us that the provisions of the statute furnish a complete answer to all three questions, and particularly to the first. It is true, as a general rule, as this Court has said in *Jackson* v. *Railroad Co.*, 43 W. Va. 380,382, following *Madden* v. *Railroad Co.*, 28 W. Va. 617, that the duty of the master to provide a reasonably safe place to work included in the general duty to furnish a safe plant, is a non-assignable duty; but, as is said in that case, "Would you say that when the farmer, *mine owner*, or lumberman sends a lot of hands upon his work in charge of a foreman or boss or overseer—call him as you may—he is to indemnify them against every mistake of the foreman while doing the work? That would make every business very perilous." Of course this language must be regarded as having particular application to the facts in that case, but is significant here as pertaining to the general rule, stated there, that a master can not be held liable for an act of mere operation, no matter by what servant done. The act in question, in its several sections, was plainly intended to provide a complete code of rules and regulations for mine owner and miner, enacted particularly, as its several provisions plainly indicate, in the interest and for the protection of the miner; and so jealous of

his rights and interests has the legislature been that by sections 409 and 410 it has imposed upon the owner or operator of the mine the duty of employing a competent fire-boss and mine-boss, with ample duties and powers prescribed, which, with reciprocal duties also imposed on the miner, are to be regarded as sufficient for reasonable safety and protection. And with respect to the subject of proper ventilation, involved in this case, the statute plainly commands that, after the owner or operator has provided and maintained the ample means of ventilation prescribed, and employed a competent fire-boss and mine-boss, each of these officers of the law shall be so far superior to the employer that the owner has no control over them in their respective spheres. So complete is the authority of the fire-boss that a miner, without notice from him, can not enter the mine without incurring liability to fine and imprisonment; he is made the sole judge of the safety of the mine upon the inspection required of him; the owner has no control over him within the line of his duties, for, by the very terms of the statute, he "shall have no superior officer." By the provisions of the statute, the mine-boss is required "to keep a careful watch over the ventilating apparatus." It is his duty also to "visit and examine every working place in the mine as often as practicable and as to him may seem to be necessary * * * , to the end that such mining places shall be made safe," and "shall not direct any one to work in an unsafe place unless it be for the purpose of making it safe." It is clear, from these provisions, that these two officers are the absolute masters of all matters pertaining to the inside working of the mine—the fire-boss, so far as relates to the inspection thereof for dangerous gases, and the notice and warnings of its condition to be given on the outside; the mine foreman, of the operation of and control over the ventilating apparatus and the general conduct of the operations; the duties of the one supplementing and correlating those of the other. The duty of the owner, having in the first instance provided a reasonably safe plant, being notified by the mine-boss "of his inability to comply with any of the requirements" of the law, is "to at once attend to the matter complained of by" him, "to enable him," the mine-boss, "to comply with the provisions" of the law.

But it is argued that the requirements of said section 409, that the air by means of the ventilation provided "shall be circulated around the main headings and working places to an extent that will dilute and render harmless and carry off the noxious and dangerous gases" in the mine, imposes this particular duty upon the owner, regardless of the duties imposed upon the fire-boss and mine-boss, and that any negligence therein must be imputed to the owner or operator. The answer to this proposition is that the circulation of the air in the manner and by the means provided is, by the terms of the statute, so inseparably involved in the performance of the duties imposed exclusively upon the fire-boss and mine-boss as to render it impossible of performance except by them in the discharge of their duties. We do not think that any fair consideration of the statute and of its manifest purposes will warrant us in giving it a construction so harsh and burdensome to the operator. A safe plant, or a reasonably safe place to work, required of the master, with respect at least to the ventilation of the mine, means in the eye of this law that it shall be so in the first instance. It was not intended that he should be made liable if it should afterwards be rendered unsafe by the the negligent manner in which the boss or foreman directed the work. As was said by the supreme court of Virginia in *Coal Co.* v. *Wells*, 31 S. E. 614. 616, an action for damages for injuries sustained by the falling of a piece of slate from a roof of a coal mine: "It was the duty of the defendant company to provide a reasonably safe place in which the plaintiff was to work, and this duty it could not assign to another; yet, if it was in the first instance in a reasonably safe condition, and afterwards rendered unsafe by the negligent manner in which its mine boss directed the work to be done or the needed precautions taken, whereby the plaintiff was injured, the mine-boss would be properly held a fellow-servant of the plaintiff, or that this was one of the risks assumed by plaintiff * * * , especially if the evidence showed that from the nature of the work the condition of the place was constantly changing, and the duty of keeping it in safe condition in the prosecution of the work, devolved both upon the plaintiff and the mine-boss." To the same effect are *Consolidated Coal & Mining Co.* v. *Floyd*, (Ohio), 25 L. R. A. 848, and *Armour* v. *Hahn*, 111 U. S. 313, 318.

This Court is committed to the proposition that a fire-boss and mine-boss are, in the performance of their statutory duties in the operation of the mine, fellow-servants of the miner, and the operator is not liable for injuries sustained by the miner by reason of the negligent performance of those duties. *William* v. *Thacker Coal & Coke Co.*, 44 W. Va. 599; *McMillan* v. *Coal Co.*, 61 W. Va. 531. These decisions were predicated mainly upon the several cases in Pennsylvania cited, interpreting similar statutes of that state from which ours were evidently copied; and we can see no good reason for receding from the doctrine of those cases. The Pennsylvania cases cover gas explosions as well as falling roofs, and further discussion of the principles involved would be unprofitable. Those cases, holding the fire-boss and mine-boss fellow-servants of the miner, seem to have been based mainly on the fact that the statute required their employment, and imposed upon them duties independently of the operator; but in some jurisdictions an ordinary mine-boss, whose employment was in no way compulsory, has also been held to be a fellow-servant of the miner. *Stephens* v. *Doe*, 73 Cal. 26, 14 Pac. 378; note to *Welston Coal Co.* v. *Smith*, (Ohio), 87 Am. St. 545, 575. We are aware that the courts of Indiana, Illinois and Ohio have construed similar statutes in those states differently; and Mr. Freeman, in his note to *Welston Coal Co.* v. *Smith*, regards the rule of those cases the better one, "dependent upon the nature of the work the boss was engaged in when guilty of negligence causing the injury," and if performing for the master any duty owed by the latter to his employees his negligence would be that of a vice-principle rather than that of a fellow-servant." But we think the reason for the rule of our own and other cases cited in that note the better one, particularly as applied to the special provisions of our statutes. The Supreme Court of the United States, it is true, in the case of *Deserant* v. *Cerillos Coal Railroad Co.*, 178 U. S. 409, has construed section 6, act of congress of March 3, 1891, chapter 564, 26 Stat. 1104, similar to ours, requiring the ventilation of coal mines in the territories of the United States by the mine owner or manager, as being mandatory on him, and as rendering him liable for any neglect or failure therein of himself or any one delegated by him to perform the statutory duties; but that stat-

ute does not, like our statute, require the appointment by the owner of a fire-boss and mine-boss and give them and not him such exclusive control of the operation and inspection of the mine. That statute was plainly intended to impose the whole burden and risk on the owner, not only in the first instance, but also in the further operation of the mine, with respect to ventilation required; and the decision therefore can not be regarded as a case in point against the construction given our statute. But we are asked to reconsider our former decisions, for the reason that the statute of Pennsylvania, construed by the decisions of that state followed by us, relates to operations in the anthracite fields, and, unlike ours, required the fire-boss and mine-boss to be selected from those who have passed examinations and obtained certificates of competency from an examining board created thereby, leaving the mine owner no choice of persons outside of this class. But we do not think any reasonable distinction can rest on this ground. True, the owner obeying the Pennsylvania statute in this particular could not be charged with negligence for employing an incompetent mine-boss or fire-boss, as he may be under our statute, for the certificate of competency would, as a general rule, be his protection.

The next question is, was the fire-boss incompetent? Our answer is, if he was the record does not show it. So far as the evidence goes, he had all the qualifications required or contemplated by our statute. He had had sixteen or seventeen years's experience as a coal miner, had "knowledge of fire damp and other dangerous gases," and was "able to detect the same by the use of a safety lamp or lamps," and so far as we can see from the evidence "had practical knowledge of the subject of ventilation of mines and the machinery and appliances used for that purpose," as required by law. But we are asked to hold him incompetent because he said he had never used an anemometer, an instrument not mentioned in the statute, but used for measuring air. This would be to interpolate into the statute a qualification not required by it. The anemometer is not one of the instruments required by the statute to be kept on hand or furnished by the owner. A safety lamp is. By it the fire-boss is required to be able to detect the presence of dangerous and noxious gases. It was due to the alleged presence of these in dangerous quan-

tities that the plaintiff alleges he sustained his injuries. There is positive evidence that the ventilating machinery was adequate. If the fire-boss was ignorant and incompetent in the use of the anemometer, if required, the plaintiff could not charge the defendant with his injuries without allegation and proof that they were traceable to that particular cause. The plaintiff offered no evidence of the incompetency of the fire-boss. His ignorance of the use of the anemometer appeared upon his cross-examination. Plaintiff relied on the evidence of the presence of gas in the mine as *prima facie* establishing the negligence of the defendant; and his counsel rely on *Graham* v. *Coal & Coke Co.*, 38 W. Va. 275. The Court does say in that case: "That gas was in the mine in violation of law follows from the simple fact that an explosion of it entailing injury to the miner took place." No fire-boss was employed in that case—an act of negligence in itself, rendering the operator liable for that reason for the negligence in suffering explosive gases to accumulate in dangerous quantities in the mine, which would have been imputed to the fire-boss if one had been employed, but properly imputed in that case to the operator.

Was the stopping of the fan the day preceding the accident such negligence of the defendant to which the jury could refer the plaintiff's injuries? The evidence does not disclose the length of time the fan was not in operation. Witnesses say that at nine o'clock in the morning and at twelve o'clock noon of July 4th the outside fan was not running; but for how long a time this continued they do not say. Other witnesses who saw this fan say it was running during July 4th at six o'clock, at nine o'clock, and between eleven and twelve o'clock in the morning, and between four and five o'clock in the afternoon, and all night of July 4th; so that if this fan had stopped running at the particular times mentioned, it may have been and probably was only for a short time to make repairs or for some other unavoidable reason. Unfortunately the fan runner in charge that day was dead at the time of the trial, and the exact fact can never be known. Section 409, contemplates the necessity of shutting down the fan when necessary, and provides that the workmen shall then be immediately instructed to withdraw, and that "no mine operator shall be required to keep the fan going where

it is necessary to shut it down for the purpose of repairing machinery or doing other work in the mines which may make it necessary." But, say this contingency justifying shutting down the fan had not arisen, the mine was not being operated; no miners were at work in the mine, and if the fan was stopped and the injuries of the plaintiff could be proximately referred to that cause, to whom may we under the law of fellow-servantcy impute the negligence? Certainly not to the owner.

In my investigations, I have found the English cases of *Knowles* v. *Dickinson*, 2 Ellis & Ellis, Q. B. 705, and *Brough* v. *Homfray*, 15 Min. Rep. 6, L. R. 3, Q. B. 771, relating to the ventilation of coal mines. In the first, a criminal case giving instruction to St. 18 & 19 Vict., C. 108, section 4, the facts were that the ventilating apparatus was stopped at about two o'clock on each Saturday afternoon, and did not recommence work until between five and six o'clock on the following Monday morning, resulting in the accumulation of a great amount of foul air and dangerous gases in the mine in the meantime, of which the miners complained when returning to work on Monday morning. The statute required, among the rules to be observed, "an adequate amount of ventilation" to "be constantly produced in all collieries," in order that the working places of the pits and levels of such collieries might "under ordinary circumstances be in a fit state for working," and imposed a penalty on the owner or agent if any colliery should be worked and the rules neglected or wilfully violated; and it was held that the agent of the colliery, which was actually worked only on such days, incurred the penalty for breach of the rule by neglecting to keep up adequate ventilation in the colliery during the suspension of actual work between Saturday night and Monday morning, for, notwithstanding such suspension, the colliery was "*worked*" during that time within the meaning of that section. In the second case it was held "not sufficient compliance with this rule to cause ventilation to pass along the working places and traveling roads, but that so much of the mine must be kept so ventilated as to render the working places and traveling roads safe." The case here presents no such state of facts as appeared in those cases. Our statute is not the same as the English statute. That provided for no special agents with

exclusive control of operations, as our statute does. While it is true it was held in the first case that the word "worked" covered the period of suspension from Saturday to Monday neither case can be regarded as opposed to our views and the construction given our statute, for the case proven here involves no such period of suspension as there, or as to justify even the inference of negligence on the part of the defendant or of the fire-boss or mine-boss. Our statute contemplates and excuses such temporary shutting down of the fan as was proven' in this case, and provides for adequate protection of the miner.

It remains to consider the instructions. The objections to plaintiff's instructions numbered 1, 3, 4, 5 and 7, given, are that they do not propound the law correctly, are inapplicable, and misleading. Numbers 1, 3, 4 and 5 in general terms told the jury that it was the duty of the defendant "to use reasonable care and diligence for the safety of its employees;" that the plaintiff had the right, in entering the service of the defendant, to presume it had discharged this duty, he being presumed to have assumed only those ordinary risks connected with his employment existing after discharge by defendant of its duties; that the specific non-assignable duties of the defendant were to provide plaintiff a "suitable and reasonably safe place in which to work," "to provide and maintain for the operation of its mines in mining coal * *. reasonably safe and suitable structures and instrumentalities," to use "ordinary care," "reasonable care, foresight and prudence" therein, and not expose plaintiff "to dangers, perils or hazards from which he could be guarded" thereby; and each tells the jury, in general terms, that if they find from the evidence defendant failed in the performance of any of those duties, and by reason thereof and without negligence on his part the plaintiff was injured in the manner alleged, they must find for him. The seventh defines the words "ordinary care," used in said instructions, to mean "such watchfulness, caution and foresight as under all the circumstances of the particular service a corporation controlled by prudent and careful officers should exercise." The only evidence offered to prove negligence, and to which these instructions could possibly have application, related to the presence of gas in the mine, stoppage of the fan, and alleged incompe-

tency of the fire-boss. As we have concluded that as matter of law there was no evidence of incompetency of the fire-boss, and any negligence in suffering an accumulation of gas in the mine and in stopping the fan was that of fellow-servants of the plaintiff in the operation of the property, and not of the defendant in the first instance in establishing and maintaining a safe plant, these instructions, if not too general in terms, as they are, could have no application to the case attempted to be made. They are therefore reduced to mere abstract propositions, and contain no reference to any evidence to which they are applicable, and are objectionable on both grounds. *Claiborne* v. *Railway Co.*, 46 W. Va. 363; *State* v. *Sheppard*, 49 W. Va. 582; *Parkersburg Ind. Co.* v. *Schultz*, 43 W. Va. 470; *Parker* v. *Building & Loan Association*, 55 W. Va. 134; *State* v. *Dodds*, 54 W. Va. 289, 295. But it is said in argument that instruction number one was taken from *Skidmore* v. *Railway Co.*, 41 W. Va. 296, as it seems to have been. While such an instruction is copied into the opinion in that case as one given by the court below, yet on the hearing here this Court was not called upon to pass judgment thereon. We are not called upon here to decide, and do not decide, whether an instruction in such general terms, without any reference to the evidence, and disconnected from other and more specific instructions, would not be good in any case. All we do decide is that it is inapplicable to this case, for the reasons assigned, and should not have been given.

Instructions 8 and 9 should not have been given. The first confuses the shutting down of the fan, which requires permission of the district inspector, with the temporary shutting down thereof not requiring such permission; and erroneously assumes that the particular instances proven when the fan was not running on July 4th constituted negligence imputable to the defendant. Number 9 erroneously assumes there was evidence that the fan did not have capacity to supply the mine. As we have shown, there was no evidence justifying either of these instructions; they do not state correct propositions of law applicable to this case, and should not have been given.

With respect to defendant's instructions numbers 1, 2, 3, 5, 9, 10 and 12, refused: The first is a peremptory instruction

to find for the defendant. The views already expressed regarding the merits of the plaintiff's case, would render this instruction proper. As we have held, the negligence, if any, was the negligence of the fire-boss or mine-boss, not imputable to the defendant. Defendant's instruction number 6, given, told the jury if such was the fact they should find for the defendant. Of the other instructions given, number 7 properly told the jury that all the duties of the defendant not shown by the evidence to have been omitted are presumed to have been performed; number 8, that the mere fact that there was an explosion and injury to the plaintiff was not in itself sufficient to fix the liability on the defendant, or raise any presumption of the defendant's negligence, the burden being on the plaintiff to prove by a preponderance of evidence some positive act of negligence. Number 11 stated in different language practically the same proposition as number 8; and number 4 told the jury that if the plaintiff knew or ought to have known that the defendant's mine generated gas in dangerous quantities, and entered the mines on the morning he was hurt without warning as to its safety given him by the fire-boss on the outside of the mine, they should find for the defendant. The plaintiff admits having entered the mine without such notice; at least he says, when inquired of on this subject, that he did not see the mine-boss before he went into the mine; and to the question whether on the morning he was hurt the fire-boss gave him notice or warning that the mine was safe for him to go in, he answered: "No, sir; nobody told me; I did not see him." The injury is shown to have occurred shortly after the plaintiff went into the mine, on the morning of July 5th. We think the instructions for the defendant given properly propound the law of the case, and without disregarding these instructions the jury could not have found otherwise than for the defendant; hence instruction number 1 should have been given.

Defendant's instruction number 2 was properly rejected. It erroneously assumes, as a general proposition that the duty of the operator of a mine to provide a reasonably safe place to work applies only to the particular place the employee is appointed to work, and tells the jury that if from the evidence they find the plaintiff at the time of his injuries had gone to room number 27 for some purpose of his own and not

as a place to work, they should find for the defendant. If the instruction had been applied to an abandoned part of the mine, where gas was known to exist in dangerous quantities, and against which plaintiff might have been warned, it would be applicable; but, in this instance, it could only have related to the evidence that the plaintiff had gone to room number 27 to get his tools and thence to his new place of assignment by the mine-boss. The plaintiff undoubtedly had a right to go there for that purpose; and if rightly in the mine, and at a place where he had the right to assume the mine was reasonably safe, the defendant would not be excused for any breach of duty to him.

We think instruction number 3 was also properly rejected. It assumes negligence on the part of the defendant in permitting gas to accumulate in the mine; but tells the jury that, if from the evidence they find the gas would not have occasioned injury unless ignited by a fellow-servant who went into the mine without permission of the fire-boss, or without notice or signal from the latter that the mine was safe, the plaintiff cannot recover. If there was culpable negligence of the defendant, the mere fact that the fellow-servant who ignited the gas had gone into the mine without such notice would not excuse the defendant for injuries resulting to the plaintiff while rightfully in the mine. This instruction is based on *Berns* v. *Coal Co.*, *supra.* In that case it was assumed that the miner injured was rightfully in the mine, and that a fellow-servant with lighted lamp went into a dangerous part of the mine contrary to orders of the operator, resulting in the injury of the plaintiff—quite a different state of facts from those in this case.

Instructions 5, 9 and 10 were rather too general, and are without specific reference to any evidence to which they are applicable. Besides, their rejection, as well as rejection of number 12, we do not think constituted error, as the subjects of these instructions were sufficiently covered by instructions numbers 6, 7 and 11, given. In such case the refusal of an instruction, although correct, is not error. *Arthur* v. *City of Charleston*, 51 W. Va. 132; *Ward* v. *Brown*, 53 W. Va. 227.

Our conclusion on the points involved will necessarily reverse the judgment below. But because the court erred in

not giving the peremptory instruction to find for the defend-
ant, shall we give judgment here for it? As we can not affirm-
atively see that a different case may not be presented on a
new trial, we have concluded simply to reverse the judgment
and award the defendant a new trial.

*Reversed, and New Trial Awarded.*