# CHARLESTON.

BRALLEY, ADMR. *v.* TIDEWATER COAL & COKE CO.

Submitted June 4, 1908.   Decided November 16, 1909.

1.  MASTER AND SERVANT—*Injuries to Servant—"Fellow Servants."*
    A mine boss and fire boss employed in a coal mine, pursuant
    to sections 409 and 410, Code 1906, in the performance of the
    duties thereby imposed upon them, including the duty of the
    mine boss to see that as the working places advance break-
    throughs for air are made, or that brattice shall be used,
    are fellow servants of the miner employed therein, and the
    master is not liable for injuries sustained by such miner on
    account of the negligent performance of those duties.   (p. 280).

Error to Circuit Court, McDowell County.

Action by E. C. Bralley, Sheriff, against the Tidewater Coal
& Coke Company. Judgment for plaintiff, and defendant brings
error.

*Reversed and Remanded.*

*Rucker, Anderson, Strother & Hughes,* for plaintiff in error.

*L. C. Bell, Ritz & Litz, Strother, Taylor & Flanagan,* and
*M. L. Davis,* for defendant in error.

Miller, President :

The plaintiff below recovered a verdict and judgment against
defendant for $3500, for the death of G. T. Lipscomb, a coal
miner, the result of being burned by gas generated in defendant's
mine and ignited from the lamp of another miner employed in
another part of the mine.

The negligence charged in the four counts of the declaration
is, that defendant wrongfully and negligently permitted fire
damp, gases, vapor, and foul air to accumulate in the main
and side entries; employed and retained incompetent and in-
experienced agents and servants; failed to furnish safety lamps;
employed and used a poor, defective and insufficient ap-
paratus, called a fan, for driving air into said entries; failed to
employ a competent mine boss and fire boss, and to keep at
said mine safety lamp or lamps, as required by law, and to have
the mine examined and notice given employees of the accumula-
tion and existence therein of fire damp and dangerous gases,
and to provide ample means of ventilation; failed to cause air
to be circulated through the said entries, headings and work-
ing places so as to dilute, render harmless and carry off fire
damp, gases and vapors, but permitted the same to be ignited
and to explode with great force and violence about deceased
while employed in said mine, in the discharge of his duties, and
whereby he was bruised, wounded, suffocated and injured, so
much that he then and there died.

The evidence shows that on the day deceased sustained the
injuries complained of he had been employed in the defendant's
mine, in company with another miner, and that after having
blown down an amount of coal the two left the mine, intending
to return during the night shift and load their coal. On the
way out they met the mine boss, who says he warned them of the
presence of gas in the mine, and that the last break-through
next to the heading where they had been at work was not yet
completed, and that they had better not go into the mine until
it should be completed. The practice was to make break-
throughs every sixty feet, as the work progressed. The miner

who was with Lipscomb did not recollect that the mine boss warned them of the presence of gas. He admits, however, that the fact that the break-through was not completed was mentioned, and that they talked of the burning of a mule by gas near the same place but a short time before that. Lipscomb alone returned to the mine that night, and the testimony of one of the miners is that Lipscomb fanned the gas out of the place where he was at work with his coat, and that the gas which burned Lipscomb was ignited from his lamp some eighty feet from where Lipscomb was employed, which was from 110 to 120 feet from the last break-through.

The plaintiff offered no other evidence showing any alleged negligence of the defendant, or of the mine boss or the fire boss, unless the fact that the last break-through had not been completed or brattice not used, as to which there is no specific allegation, be evidence of the alleged failure to provide ample means of ventilation. No evidence on either side showed negligence in any other particular. And contrary to the fact alleged in the declaration the evidence showed employment and retention of a competent mine boss and fire boss, and that the means of ventilation, required by the statute, unless the incompleted break-through and failure to use brattice, should be regarded a part of such means, was ample for the purposes of the mine.

Unless this case can be differentiated from *Williams* v. *Thacker Coal & Coke Co.*, 44 W. Va. 599; *McMillan* v. *Coal Co.*, 61 W. Va. 531; and *Squilache* v. *Coal & Coke Co.*, 64 W. Va. 337, they must control our decision. The only point of distinction attempted is that as the same section, section 409, Code 1906, which imposes upon the operator or agent of a coal mine the duty to provide and maintain ample means of ventilation, also requires that "as the working places shall advance, break-throughs for air shall be made every one hundred feet in the pillars, or brattice shall be used," the operator of the mine is bound to the performance of the latter duty as well as the former, and is not excused from liability on account of the negligent performance of the latter duty by the mine boss, because, by section 410, the performance of that duty is specifically imposed on him. It is argued that the duty respecting break-throughs is a double duty, imposed upon the operator by the first section as well as the mine boss by the latter section, and that the

doctrine of fellow servantcy applied in the cases cited, can have
no application to this case. In view of the construction here-
tofore placed by us upon this mining law we see little force in
the argument. So far as it is based upon the two provisions of
section 409 alluded to, the same argument might be made with
respect to the appointment of a fire boss and the duties imposed
upon him by said section. We are required to read sections
409 and 410 together. They pertain to the same subject matter.
Section 410 does not say that the operator or agent of the mine
shall personally discharge the duty of making break-throughs,
or the use of brattices, any more than it requires of him discharge
of other duties thereby required and imposed on the fire boss;
but section 410 specifically imposes that duty upon the mine
boss. True it is that the provisions of section 410 were made,
as recited, to better secure the ventilation of coal mines, and
to promote the health and safety of persons employed therein;
yet we think that the purpose of the legislature, with that end
in view, was that these officers, the mine boss and the fire boss,
were to have no *respondeat superior* with respect to those duties
specifically devolved upon them by the statute, but that they
within their several spheres, should be made the responsible
agents, and be independent, and from under the control of the
operator in the discharge of those duties, with authority given
them by the statute to call upon and require of the operator
that he provide them with the means and materials for the
proper performance thereof.

In consonance, therefore, with our previous decisions, we
must hold the mine boss and fire boss fellow servants with the
miner in the performance of the duties imposed upon them re-
specting the ventilation of the mine, including therein the duty
of the mine boss to make break-throughs, and to use brattices
for such ventilation.

In considering this case our attention has been called to the
fact that the legislature of Illinois, in 1905, in re-enacting the
mining laws of that state, made provisions therein similar to
those in Pennsylvania and in this State, and that the supreme
court of Illinois, in *Henrietta Coal Co.* v. *Martin*, 221 Ill. 460,
refused to follow our decisions and the decisions in Pennsylvania,
in construing the Illinois statute. We have considered those
cases as well as the later cases of the same court, together with

the decision of the Supreme Court of the United States, 205 U. S. 60, in the case of *Wilmington Mining Co.* v. *Fulton,* originating in Illinois and affirming the judgment below. This latter case went to the Supreme Court upon a constitutional question, and of course that court did not undertake to give its own construction of the statute in question. It simply followed the construction given by the supreme court of Illinois, and determined from it whether the statute, as alleged, was in conflict with the Fourteenth Amendment to the Federal Constitution. No consideration of these cases induces us to depart from our former decisions.

These conclusions render it unnecessary for us to consider specifically any other questions presented and argued here. They are all answered by our conclusions on the main question.

We are, therefore, of opinion to reverse the judgment below, award the defendant a new trial, and to remand the case to the circuit court for that purpose.

*Reversed and Remanded.*

WILLIAMS, JUDGE, *(dissenting):*

I am unable to agree with my associates in so much of the foregoing opinion as holds that the mining boss is not a vice-principal, or agent, of the operator in so far as the question relates to the performance of those duties which are expressly enjoined by statute upon the operator, as well as upon the mining boss. Section 409, Code 1906, makes it the duty of "the operator or agent of every coal mine" * * * * to provide and maintain "ample means of ventilation," and specifies what the means of ventilation shall be, one of which is break-throughs in the wall, or brattice. This, in my opinion, is a non-assignable duty; and notwithstanding the statute, section 410, enjoins the performance of the same duty upon the mining boss, I do not think the legislature thereby intended that the operator should be relieved from performing it also, or from seeing that it is done. If he chooses to entrust the performance of this joint duty wholly to the mining boss, he thereby makes him his agent for that purpose. I do not deny that, in the performance of those duties enjoined solely upon the mining boss, he is properly regarded as a fellow servant with the miner. But in relation

to the negligent act which caused the death of plaintiff's intestate, the failure to make break-throughs not more than one hundred feet back from the heading, or to use brattice, so as to properly ventilate the heading, it was the joint negligence of both operator and mining boss, because the statute expressly makes it the duty of both to do the act. To my mind there is no escape from this conclusion. A failure to make break-throughs not less than one hundred feet back from the heading, or to use brattice instead, is negligence *per se,* because the statute expressly requires it to be done. The statute is intended to define what is a reasonably safe place in which to work, as applied to coal mines, and imposes upon the operator a non-assignable duty. Section 410 was not intended to relieve him, but was intended to give greater security to the miners. The making of break-throughs, or the use of brattice, is an essential means of maintaining a proper ventilation; without one or the other there could be no ventilation; they are necessary to the circulation of air; and circulating air is essential to the health and safety of the miner. Without air passages the fan would be a useless contrivance; without a circulating channel the fan would only serve to condense and hold the air in the working places, and prevent the escape of the dangerous gases; it would be like blowing air into a bottle.

Mr. Thompson, in his work on Negligence, Vol. 4, section 4206, in commenting on such statutes as those in Pennsylvania, Indiana and West Virginia, which require the operator to employ a mining boss, says: "The effect of such a statute is to prescribe the duties *owing by the master,* and the fact that the mine boss is required to be employed to perform those duties does not relieve the master from the obligation of performing them or of seeing that they are performed."

I have carefully considered our own cases on the point. In *Williams* v. *Thacker Coal & Coke Co.,* 44 W. Va. 599, this Court laid down the proposition that, when the operator has employed a competent mining boss, "he has discharged his duty to his employes in relation to those duties which the statute prescribes shall be performed by such mining boss, and the operator or agent is not liable for injuries arising from the negligence of the mine boss." I think this proposition is too broad to be sound in principle. It ought to be qualified by

limiting its application to the neglect of the mining boss in the performance of those duties which are not also expressly enjoined upon the operator. The facts in that case show that plaintiff's intestate was crushed and killed by the falling of slate in the mine. And, by reference to the statute, it will be seen that section 410 makes it the express duty of the mining boss to see "that all loose coal, slate and rock overhead in the working places and along the haul-ways be removed or carefully secured so as to prevent danger to persons employed in such mines;" but that statute does not enjoin this duty upon the operator. Therefore, unlike the provision in reference to the making of break-throughs one hundred feet apart, or of using brattice to properly ventilate the face, it is not a double duty enjoined upon both the operator and the mining boss. Consequently, the neglect of the mining boss to carefully inspect the roof would not be the neglect of the operator, but would be the negligent act alone of the mining boss who, as far as such act is concerned, is a fellow servant. I think that case was properly decided, but I do not think the facts warranted so broad and unqualified a statement of the principle of law as was therein made.

In *McMillan* v. *Coal Co.*, 61 W. Va. 531, plaintiff was injured by the explosion of dynamite caps which he had been directed by the mine boss to go to a box and get and carry to a fellow workman. The mining boss was there properly held to be a fellow servant of the man injured.

I think the rule was again stated too broadly in the 4th point of the syllabus of the case of *Squilache* v. *Coal & Coke Co.*, 64 W. Va. 337 (62 S. E. 446). Squilache was burned by the explosion of gas in the mine, and claimed that the presence of the gas was due to the want of proper ventilation. But just what particular act of negligence on the part of the operator plaintiff complained of does not appear. It would seem from a reading of the case that Squilache claimed that the presence of gas in dangerous quantities was sufficient of itself to show a want of proper ventilation, and the incompetency of the fire boss. It was further claimed that the stoppage of the large fan on the outside of the mine, on the day previous to the accident, was responsible for the presence of the gas, and that these facts established negligence on the part of the operator. But

it does not appear in that case that break-throughs were not made at the required distance, or that brattice was not used; nor does it appear that the injury was the result of the failure of the operator to provide the means of ventilation required by the statute. It is true that section 409 makes it the duty of the operator to keep the fan going, as well as to provide channels for the circulation of the air driven by the fan; but it does not appear that it was not necessary to stop the fan for the purpose of repairing its machinery; and the statute expressly allows it to be stopped for this purpose and for the purpose of any other work in the mine making it necessary to stop it; neither does it appear how long it was stopped or whether the stoppage was the proximate cause of the injury. In short, it does not appear that the operator failed to perform any of those acts which are expressly enjoined upon him by the statute. It may have been that the mine generated gas in such large quantities that the circulation would not have carried it away fast enough to prevent the explosion, notwithstanding the break-throughs may have been made as required by law. In such case it was clearly the duty of the mining boss to cause the break-throughs to be made nearer together than one hundred feet, and in this matter he is vested with a discretion. The neglect of the mining boss to do more than the statute expressly required, in order to secure good ventilation, would be his own neglect, and not that of the operator.

All of the above cases are clearly distinguishable from the present one, and should not control it. In neither one of them was the question presented that is directly involved in the decision of this case, which is, did the legislature intend to relieve the operator from liability for failure to provide and maintain certain specified means of ventilation, by making it also the duty of the mining boss to see that such means of ventilation are used? I think clearly not; and if the operator intrusts the performance of those double duties solely to the mining boss he thereby makes him, for that purpose, his agent or vice-principal.

Section 410, which provides for the employment of a mining boss and defines his duties, is very significant in the language used in the beginning of the section. After defining the duties of the operator in section 409, section 410 begins: "In order

to better secure the proper ventilation of every coal mine and promote the health and safety of persons employed therein, the operator or agent shall employ a competent and practical inside overseer, to be called 'mining boss'," etc.  This language clearly implies that the operator is not relieved of those duties which the previous section enjoins upon him; but that the legislature intended to provide an additional safeguard and protection to the miner, whose labor, under the most favorable conditions, is known to be of the most hazardous nature, by charging the same duties, and many more besides, upon the mining boss. This is the view taken by the appellate court of Indiana in the case of *Linton Coal Co.* v. *Persons,* 11 Ind. App. 264, in construing a statute similar to our own, which makes it the duty of both the operator and the mining boss to do certain things, and to see that they are done.  The court in its opinion on page 274, says: "This duty the employer cannot delegate so as to escape liability.  No matter by whom the duty is performed, the employer is responsible if it is negligently performed, and from that negligence injury results.  The statute cited was not intended to relieve the employer of this responsibility.  The purpose was to provide an additional safe-guard against injury to employes in mines by requiring the operator of the mine, through the mining boss, to give special attention to the safety of the mine as a working place.  It was not intended to absolve the owner or operator from liability when he employed a competent mining boss and delegated the duty to him of making safe the place where he required his employes to work."

The same interpretation was given to a similar statute by the supreme court of Illinois, in *Henrietta Coal Co.* v. *Martin,* 221 Ill. 460.

Our statute was correctly interpreted by this Court, I think, in the case of *Graham* v. *Coal & Coke Co.,* 38 W. Va. 273. That case has not been expressly overruled by any subsequent decision, and I am unable to see why the law as therein expressed is not applicable to the present case.  Point 1 of the syllabus states the law as follows: "It is the duty of the operator of every coal mine to provide ample means of ventilation, and to cause air to be circulated through the headings and working places, so as to dilute, render harmless and carry off dangerous and noxious gases" etc.  The statute, as it then was, required

the operator to see that break-throughs were made, or that brattice was used so as to keep the working places well and properly ventilated; and by the same act, as amended in 1901, he is required to do the same thing, except that by the amendment these break-throughs are required to be made every one hundred feet, or brattice to be used, thus making his duty in this regard more specific. I am supported in my view of what is a proper construction of the statute by the sound and forceful reasoning of BRANNON, Judge, found on page 275 of the opinion. I cannot see that the legislature has shown any less solicitude for the safety of the miner by the amendment of the act; I rather think it has shown more.

It does seem to me that any other construction of the statute than what I seek to give it would relieve the operator of liability from almost all acts of negligence in the ventilation and operation of the mine; and would serve to abolish, almost entirely, the doctrine which is as old as the common law itself, and which is, with few exceptions, recognized in every jurisdiction where the English common law prevails, requiring the master to furnish a reasonably safe place for his servant to work, and would also tend to encourage negligence and indifference on the part of the operator concerning the health and safety of his employes. Our statute demands no greater qualification for a mining boss than that he shall be a citizen of the state and shall have had three years experience in a coal mine. Can it be possible that the legislature meant that, if an operator should employ a person of such limited qualifications, and should turn over to him the operation and ventilation of his mine, he should thereby be relieved from all liability on account of injuries resulting from his negligence in failing to provide and maintain the means of ventilation expressly enjoined by the statute, however gross? I cannot think so. I do not think the duties imposed by statute upon the operator are at all burdensome, or difficult to perform; but, on the contrary, I think they are simple and reasonable, and the operator should be held to a strict compliance with them.

I have thus expressed my views at some length, because I am led to believe, from a careful reading of our own decisions, that the point which I have discussed has never fairly arisen in any other case in this Court, and that it is still an open one.

I admit that it is settled, and properly settled, that for many
purposes the mining boss is a fellow employe with the miner;
but I do not think it is settled that he is a fellow employe in
relation to the performance of those duties which are expressly
made the duty of both the operator and the mining boss. As
to such duties, the correct view, in my opinion, would be to
regard the mining boss as the agent, or vice-principal, of the
operator; because, as to them, he is performing a non-assignable
duty. I would affirm the judgment of the lower court.